In the Matter of DANIEL RICHARD D., a Person Alleged to be a Juvenile Delinquent, Appellant.

Fourth Department, April 9, 1970.

MacKenzie, Smith, Lewis, Michell & Hughes (Dennis G. O'Hara of counsel), for appellant.

Eli Gingold, County Attorney (Hugh C. Gregg, II, of counsel), for respondent.

GABRIELLI, J. In a case of first impression, we are called upon to determine whether the Sixth and Fourteenth Amendments to the United States Constitution require a jury trial in a Family Court proceeding charging appellant with being a juvenile delinquent based on an act which, if committed by an adult, would constitute a felony and thus entitle him to a jury trial.

On January 29, 1969 appellant, then 15 years of age, was charged with being a juvenile delinquent in having intentionally shot and killed his father. The accusation and petition filed further charged that the described acts, " if done by an adult, would constitute the crime * * * of Murder (Violation of Section 125.25 of the Penal Law of the State of New York) ".

Following his arraignment, extended argument was had upon his motion for a jury trial. This application was denied by written decision on March 10, 1969. On the following day the court, by written decision and order, also denied appellant's motion for an order to require the County Attorney " to establish that the respondent (appellant herein) committed the acts stated in the petition " by proof beyond a reasonable doubt. The court then directed that the fact-finding hearing be commenced two days later. In the interim, appellant was denied a stay by a member of this court and, on the following day (the day set for the hearing), his application for an adjournment to obtain a Federal court review of the constitutional questions, was denied by the court below. Appellant again unsuccessfully renewed his motions for a jury trial or, in the alternative for a ruling that without a jury trial he could not be subjected to a sentence of greater than one year. A brief recess was then taken during which there was an off-the-record conference between counsel for appellant, the court and the Assistant County Attorney.

Following the conference the latter announced that if appellant would admit the allegations of a new petition charging him

with an act which, if performed by an adult would be a violation of section 120.25 of the Penal Law, he would thereafter move for a dismissal of the old petition. Section 120.25 of the Penal Law provides that the crime of reckless endangerment in the first degree is committed when one engages in conduct which creates grave risk of death to another, the punishment for which is a maximum of 7 years' imprisonment, if committed by an adult. Upon his admission of this charge, appellant was subsequently adjudged a juvenile delinquent and committed to the New York State Agricultural and Industrial School for a period not to exceed three years. Appeal is taken from this adjudication and order of commitment. It is well to note here that upon a finding of juvenile delinquency the possible punishment on the withdrawn charge is commitment to Elmira Reception Center for a similar term. (Family Ct. Act, § 758, subds. [b], [c].)

In denying appellant's motion for a direction regarding the burden of proof the court held that there is no requirement " to establish that the respondent committed the acts alleged in the petition by proof beyond a reasonable doubt but (only) as required by section 744-b by a preponderance of the evidence ". Subdivision (b) of section 744 of the Family Court Act, in pertinent part provides that: " Any determination at the conclusion of a fact-finding hearing that a respondent did an act or acts must be based on a preponderance of the evidence." In so holding, the court erroneously deprived appellant of a fundamental right which has now been held by the Supreme Court to be constitutionally protected, requiring the burden of proof to be beyond a reasonable doubt. (*Matter of Winship,* 397 U. S. 358.) Subdivision (b) of section 744 of the Family Court Act, insofar as it requires a quantum of proof by a mere preponderance of the evidence is, therefore, declared unconstitutional.

It is urged that the admission of the acts alleged in the second petition was the result of a bargain made by this 15-year-old boy and, therefore, he may not now disclaim this voluntary " plea ". The dissenting Justice has bottomed his conclusion and reasoning on the argument that " appellant's admission of the allegations of the new petition and his commitment should be sustained on the ground that it was sought by him and freely taken as a part of a bargain which was struck for his benefit ". We are unable to subscribe to any theory or suggestion that a youth of this age has the capacity to waive or " bargain " away any of his constitutional rights or, indeed, that such a theory could be adopted under the circumstances so

glaringly present in this case. Of equally compelling importance, the record clearly shows that neither the second petition nor appellant's admission was considered until after the denial of the last of his several motions for a jury trial. Significantly the first petition, to which appellant's motions were originally addressed, was not dismissed until after the second petition was acted on. Additionally, we reach the inescapable conclusion that appellant was effectively denied his fundamental right of a hearing under a constitutionally protected right to a jury trial as well as rules requiring that proof of the commission of the charged acts be beyond a reasonable doubt and, therefore, his admission of the acts contained in the substituted petition was extracted in an impermissible manner. (Cf. *Nieves* v. *United States*, 280 F. Supp. 994, 1001.)

In the light of all of the described circumstances the admission, then, was not voluntarily made but rather was the result of the denial of his motions for a jury trial, the denial of adjournments prior to his " admission " of the charges and the ruling as to the required burden of proof, all of which effectively constituted instruments of coercion as to his admission of the acts alleged in the second petition. As we view the totality of these proceedings, we conclude that appellant has been denied the essentials of due process and was deprived of these constitutional rights.

The decisions in *Matter of Gault* (387 U. S. 1) and *Duncan* v. *Louisiana* (391 U. S. 145) have, it seems to us, foreclosed the answer to the question regarding his right to a jury trial. In *Duncan*, the Supreme Court held that the Fourteenth Amendment made applicable to the States the Sixth Amendment right to a jury trial in serious crimes and further (p. 159) that " the penalty authorized for a particular crime is of major relevance in determining whether it is serious or not and may in itself, if severe enough, subject the trial to the mandates of the Sixth Amendment ", and then further declared that a crime punishable by two years in prison is a " serious crime ". *Matter of Gault* (*supra*) dealt directly with certain constitutional safeguards of juveniles charged with being delinquents as a result of committing criminal acts. While the question as to the right to a jury trial was not there present, the Supreme Court held that juveniles were entitled to notice of the issues involved, benefit of counsel, protection against compulsory self-incrimination, and confrontation of the witnesses against them. It defies the power of reason to interpret the Constitution as allowing these rights to persons charged with being delinquents based

on criminal acts, and yet denying them a jury trial, a right which is certainly one of the fundamental aspects of justice in the English-speaking world. Behind the facade of the charge of juvenile delinquency in this case is the serious charge of murder or of attempted murder.

Having determined in *Gault* that a child must, as a matter of due process, be afforded certain constitutional rights on the ground that the child may "be found to be 'delinquent' and subjected to the loss of his liberty for years", and since he is in a situation which is "comparable in seriousness to a felony prosecution" (p. 36), it follows then that the safeguards available to adults may not be disregarded in a child's case. Hence, there is an inescapable conclusion that a finding of delinquency based on the allegations and facts here presented ought to be made only after the right to a jury trial has been afforded.

In *Matter of Hogan* v. *Rosenberg* (24 N Y 2d 207) the court considered the effect of *Duncan* on certain provisions of the New York City Criminal Court Act and held that section 40 of the act (authorizing nonjury trials in *misdemeanor* cases) was constitutional but directed that reformatory terms of up to four years could not be imposed on young offenders between 16 and 21 and, thus, effectively held that they could be sentenced to a maximum of one year. We may, therefore, conclude that the court designated as "serious", a charge which could result in confinement for more than one year.

We have recently held in *People* v. *Sawyer* (33 A D 2d 242) that one charged with being a youthful offender is effectively denied due process when he is required to consent to a nonjury trial as a prerequisite for treatment as a youthful offender. We there determined, as others have held (*People* v. *Michael A. C. [Anonymous]*, 32 A D 2d 554; *People* v. *Jerome C. [Anonymous]*, 32 A D 2d 840; *Matter of Saunders* v. *Lupiano*, 30 A D 2d 803), that such a requirement is unconstitutional. (See, also, *People* v. *Lawrence S. [Anonymous]*, 33 A D 2d 775; *People* v. *Lancaster*, 34 A D 2d 727.)

A lesser standard of justice than that permitted to adults and youthful offenders may not be justified on the theory that juvenile delinquency proceedings are designed to save a child. Objectivity requires us also to recognize that saving a human being is likewise the end result sought via the rehabilitation of adults and youthful offenders.

It has been effectively stated that "any commitment— whether 'civil' or 'criminal', whether assertedly for 'punitive' or 'rehabilitative' purposes — involves a grave

interference with personal liberty''. (Report of Joint Legis. Committee on Court Reorganization, Jan. 30, 1962, p. 8.) With further reference to this subject we point out that at the hearing in the case at bar, on March 5, 1969 the court posed the rhetorical question '' didn't the Duncan case and the Gault case both hold in substance you shall not elevate form over substance and regardless of what you call a place of incarceration whether you call it a school or rehabilitation center it's still essentially a prison?'' We are constrained to agree with the obvious affirmative answer.

'Uppermost in our mind must be the realization that an adjudication of delinquency, as here, can result in confinement in a State training school for several years. The impact of this was dramatically pointed up by the Supreme Court in *Gault* (387 U. S. 1, 27, *supra*) when it stated that, '' ultimately, however, we confront the reality of that portion of the Juvenile Court process with which we deal in this case. A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence — and of limited practical meaning — that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a ' receiving home ' or an ' industrial school ' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes ' a building with whitewashed walls, regimented routine and institutional hours * * * ' [*Holmes' Appeal*, 379 Pa. 599, 616, MUS-MANNO, J., dissenting.]. Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and ' delinquents ' confined with him for anything from waywardness to rape and homicide.''

The '' civil-criminal '' distinction between adult crimes and delinquency cases is nonexistent insofar as a child's constitutional safeguards are concerned. This is particularly so where a possible result of the proceedings is incarceration for a substantial period of time, and as the court added in *Gault* (387 U. S. 1, 30), '' we do hold that the [juvenile delinquency] hearing must measure up to the essentials of due process and fair treatment.''

In its reversal (predicated upon the use of unlawfully received confessions) the court set aside a finding of delinquency in *Matter of Gregory W.* (19 N Y 2d 55) and adopted the rationale of the dissenters in the Appellate Division (26 A D 2d 695, 697)

wherein they had held that an alleged juvenile delinquent is entitled to "the same constitutional requirements of due process without regard to the nature of the proceeding, the standards of proof, or the punishment to follow, where the liberty of an individual is in the balance (cf. *Matter of Alaimo*, 16 A D 2d 814)" and added that, "a juvenile charged in Family Court with the commission of acts amounting to a crime if committed by an adult should surely enjoy the same constitutional safeguards as would the adult charged in a criminal prosecution (cf. *Matter of Contreras*, 109 Cal. App. 2d 787; *Ex parte Osborne*, 127 Tex. Cr. R. 136; *State* v. *Franklin*, 202 La. 439; *Matter of Gault*, 99 Ariz. 181)."

Following its decision in *Gault* the Supreme Court was presented with the question of a juvenile's right to a jury trial in *DeBacker* v. *Brainard* (396 U. S. 28). By a divided court, the majority held it inappropriate to consider the question since the case under review antedated *Duncan* v. *Louisiana* (391 U. S. 145, *supra*) which had been held to have only prospective application in *DeStefano* v. *Woods* (392 U. S. 631). The dissenters preferred to meet head-on the fundamental questions posed, and reached the merits, holding that the youth involved, charged with forgery, was entitled to a jury trial in a juvenile delinquency proceeding. It is of interest to note that 4 of the 7 members of the Nebraska Supreme Court from which the appeal was taken, determined that the State statute providing for juvenile delinquency hearings without a jury, was unconstitutional, but that State's Constitution requires the concurrence of 5 Judges before an act can be held unconstitutional.

We can find no constitutionally sufficient reason to deprive a juvenile of a jury trial when he is faced with the possibility of incarceration of more than one year because of his criminal acts. Whenever there is a trial or hearing involving a criminal offense of this nature, whether in conventional terms or in the language of delinquency, all of the procedural requirements and safeguards of the Constitution and Bill of Rights should be provided. Infancy should not invoke a forfeiture of any of these rights nor should the penalty of being a youth be the deprivation of due process and fairness to the end that the constitutional right here involved be withdrawn from children charged with having committed serious crimes. Since, as in *Matter of Gault* (387 U. S. 1, 49), it was determined that "juvenile proceedings to determine 'delinquency', which may lead to commitment to a state institution, must be regarded as 'criminal'" for purposes of the constitutional safeguards there

involved, we cannot place such a proceeding in a different category insofar as it involves the otherwise important constitutional safeguard of a trial by jury.

In holding that a jury trial must be afforded to one charged with juvenile delinquency involving a serious crime as defined by *Duncan* v. *Louisiana* (391 U. S. 145, *supra*) and *Matter of Hogan* v. *Rosenberg* (24 N Y 2d 207, *supra*) we were mindful of the requirement of the privacy of such proceedings. The presence of a jury would not violate the required privacy and, as aptly stated by Mr. Justice BASTOW in *People* v. *Sawyer* (33 A D 2d 242, 245, *supra*) " If there is a conflict, then the State statute must yield to the mandate that ' The deep commitment of the Nation to the right of jury trial in serious criminal cases as a defense against arbitrary law enforcement qualifies for protection under the Due Process Clause of the Fourteenth Amendment, and must therefore be respected by the States.' (*Duncan* v. *Louisiana,* 391 U. S. 145, 156, *supra.*) "

Neither should we be concerned with the frequency of such requests for jury trials. The existence of a right is not conditioned on the number of occasions that it will be put to use or the persons who will use it. Rather, the right is established by our system of government to protect the people to whom it is made available.

By our declaration that a jury trial should be afforded to a youth charged with being a juvenile delinquent based on an act which if committed by an adult, would constitute a crime, we limit our holding to those charges involving serious crimes as defined by *Duncan* v. *Louisiana* (*supra*) and *Matter of Hogan* v. *Rosenberg* (*supra*). We do not suggest that those provisions of the Family Court Act dealing with neglect and delinquency cases not involving a crime or acts of a criminal nature, require a jury trial. (Cf. *People* v. *Fitzgerald,* 244 N. Y. 307, 312.)

Our resolution of the basic and fundamental issues presented renders academic the other questions raised.

The order should be reversed and the proceeding remitted to the Onondaga Family Court for further proceedings not inconsistent with this opinion.

HENRY, J. (dissenting). When appellant appeared with his attorney in Family Court on March 13, 1969 to answer the petition dated January 29, 1969, charging him with acts which if committed by an adult would be in violation of section 125.25 of the Penal Law constituting the crime of murder, the court, in response to a question asked by appellant's attorney, correctly stated that on the allegations of the petition appellant could be committed to Elmira Reception Center for a period up to three

years. Appellant's attorney thereupon requested an adjournment for the purpose of having a discussion with the court and the County Attorney. After the discussion the County Attorney stated: "it is the recommendation of our office that a new petition be filed and this petition would be an allegation that Daniel Richard * * * performed an act which if performed by an adult would be a Violation of Section 120.25 of the Penal Law of the State of New York. (reckless endangerment) It is further our recommendation that upon the appropriate arraignment of this Court and upon Respondent being represented by counsel and by being properly advised by the Court, if he admits the allegations of the new petition that at that time I would move for dismissal of the old petition ".

The court received the new petition. It was read to appellant. The court then stated to appellant and his attorney "you can admit or deny the petition." Appellant's attorney said, "He admits the petition ". The court asked appellant, "Do you admit the allegations of the petition?" and appellant answered, "Yes, your Honor ". The record shows, and appellant does not claim otherwise, that appellant's answer to the new petition was voluntarily and understandingly made. He did not then, nor does he now, ask to withdraw or change his answer admitting the allegations. The order appealed from committed appellant to the New York State Agricultural and Industrial School at Industry for an indefinite period not to exceed three years.

The original petition charged acts which if committed by an adult would constitute a Class A felony (Penal Law, § 125.25). Upon an adjudication thereunder commitment could be to Elmira Reception Center (Family Ct. Act, § 758, subd. [b]); whereas under the new petition appellant could not be so committed. Appellant's admission of the allegations of the new petition and his commitment should be sustained on the ground that it was sought by him and freely taken as part of a bargain which was struck for his benefit. (*People* v. *Foster*, 19 N Y 2d 150, 154.) Reversal is not required by our decision in *People* v. *Sawyer* (33 A D 2d 242), where we held that a youthful offender was entitled to a trial by jury notwithstanding his written consent to be tried without a jury, because his consent was extracted in an impermissible manner. He was required to consent to a nonjury trial as a prerequisite to consideration for adjudication as a youthful offender. In the case at bar no objection was made to the new petition. The answer admitting its allegations was voluntarily and understandingly made, and the allegations being admitted there was no issue to be tried.

The order should be affirmed.

50

GOLDMAN, P. J., WITMER and MOULE, JJ., concur with GABRIELLI, J.; HENRY, J., dissents and votes to affirm in opinion.

Motion to dismiss appeal denied. Order reversed on the law and facts and matter remitted to Onondaga County Family Court for further proceedings not inconsistent with the opinion by GABRIELLI, J.