HAROLD ARWOOD v. STATE OF TENNESSEE.
JERRY LEE CHANCE v. STATE OF TENNESSEE.
JIMMY WATSON v. STATE OF TENNESSEE.
—463 S.W.2d 943.

Eastern Section. July 29, 1970.

Certiorari Denied by Supreme Court January 18, 1971.

Rehearing Denied by Supreme Court March 1, 1971.

Ben Hooper, II, Newport, for appellants.

Arnold Peebles, Jr., Assistant Attorney General of the State of Tennessee, Nashville, for appellee.

COOPER, J.   Harold Arwood, Jerry Chance and Jimmy Watson, all three juveniles, were adjudged to be delinquent children by the Juvenile Court of Sevier County and each was sentenced to serve an indefinite term in the State Vocational Training School for Boys in Nashville, Tennessee. The defendants appealed to the Circuit Court for Sevier County.[1] Before trial in that court, the defendants separately demanded a jury trial by entry made on the court docket on the first day of the trial term,[2] and by petition. The requests for a jury trial were denied and the petitions were dismissed. The charges of delinquency against the defendants were tried *de novo*,[3] with the Circuit Judge being the arbiter of the facts. The Circuit Judge concluded from the evidence presented to him that each of the defendants was guilty of the offense charged against him in the delinquency petitions[4] and, as a consequence, was a "delinquent child" within the meaning of the laws of Tennessee.[5] An order was entered in the Circuit Court remanding

---

[1] "The juvenile court shall be a court of record. When a juvenile court shall make any disposition of a child, either party dissatisfied with the judgment or order may appeal to the circuit court which shall hear the testimony of witnesses and try the case de novo. * * * In its order the circuit court shall remand the case to the juvenile court for enforcement of the judgment entered by the circuit court." T.C.A. sec. 37-273.

[2] T.C.A. sec. 20-1203 and T.C.A. sec. 20-1204 Cf. Doster v. State, 195 Tenn. 535, 260 S.W.2d 279.

[3] See Note 1 *supra*.

[4] Arwood and Chance were charged with "Arson." Watson was charged with being "an accessory to Arson." Both offenses are classed as felonies under the penal law of Tennessee. T.C.A. sec. 39-109 and T.C.A. sec. 39-501.

[5] "(5) 'Delinquent Child' means a child—(a) who violates any state law or ordinance of a municipality of the state. * * *" T.C.A. sec. 37-242.

the cases to the Juvenile Court for post-adjudicatory action.[6] This appeal resulted.

The assignments of error present one narrow question for decision by this court. Does a juvenile defendant have a constitutional right to a jury trial where the charge of delinquency levelled against him is predicated on the commission of an offense which, if the person charged were an adult, would be triable by a jury?[7]

This question has its origin and answer, we think, in the recent decisions of the Supreme Court of the United States in the cases of In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

Before these decisions, state courts, taking the view that proceedings against a juvenile are not criminal in nature and are for the rehabilitation and welfare of the child before the court, generally have held the constitutional provisions guaranteeing a jury trial are not applicable to juvenile court proceedings. See Anno: Juvenile Delinquency—Jury Trial, 100 A.L.R.2d 1241 et seq. See also State ex rel. Jackson v. Bomar, 215 Tenn. 9, 383 S.W.2d 41 and State v. Jones, 220 Tenn. 477, 418 S.W.2d 769.

In this day of increased awareness of the rights of the individual protected by the Constitution of the United States, as well as the rights of the individual under state

---

[6] See Note 1 *supra*.

[7] This question is now before the United States Supreme Court in In re Burris, 397 U.S. 1036, 90 S.Ct. 1379, 25 L.Ed 2d 647 by certiorari granted April 20, 1970.

constitutions, it was inevitable that the procedures followed in the juvenile courts would come under scrutiny. While recognizing the rehabilitative purpose of the juvenile court, legal writers have expressed concern that the juvenile has been forced to relinquish too many rights in exchange for an unfulfilled promise of treatment rather than punishment. See Juvenile Delinquents: The Police, State Courts, and Individualized Justice, 79 Harv.L.Rev. 775-810; Glueck, Some "Unfinished Business" in the Management of Juvenile Delinquency, 15 Syracuse L.Rev. 628-40; Ketcham, The Unfulfilled Promise of the Juvenile Court, 7 Crime and Delinquency 97.

The first comprehensive review and treatment of constitutional requirements of due process as applied to juveniles was undertaken by the Supreme Court of the United States in In re Gault, *supra*. The Court, in an opinion by Mr. Justice Fortas, held that juveniles charged with being "delinquents" as a result of committing a criminal act were entitled to certain constitutional safeguards—namely, adequate and timely notice of the charges against him, the right to counsel, the right to confront and cross examine witnesses, and protection against self-incrimination.

In the course of the opinion and after recognizing and discussing the history and purpose of juvenile courts, Mr. Justice Fortas pointed out that "ultimately, however, we confront the reality of that portion of the Juvenile Court process with which we deal in this case. A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence—and of limited practical meaning—that the institution to which he is committed is called an Industrial School.

The fact of the matter is that, however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes 'a building with whitewashed walls, regimented routine and institutional hours. * * *' Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and 'delinquents' confined with him for anything from waywardness to rape and homicide.

"In view of this, it would be extraordinary if our Constitution did not require procedural regularity and the exercise of care implied in the phrase 'due process.' "

In In re Winship, *supra,* the Court held that the reasonable doubt standard of criminal law has constitutional stature and that juveniles, like adults, are constitutionally entitled to proof beyond a reasonable doubt where the charge of "delinquency" is predicated upon an alleged violation of a criminal law.

In Duncan v. Louisiana, *supra,* where the defendant was an adult, the Court held that "the right to jury trial in serious criminal cases is a fundamental right and hence must be recognized by the States as part of their obligation to extend due process of law to all persons within their jurisdiction." (391 U.S. at 154, 88 S.Ct. at 1450). The Court further declared that a crime punishable by two years in prison is a "serious crime."

Given the fundamental nature of the right to jury trial as expressed in *Duncan,* and the announced recognition by the Supreme Court of the United States that a juvenile is not to be deprived, because of his youth, of safe-

guards afforded the citizens of this country by the due process clause of the Fourteenth Amendment and the Bill of Rights, there is, as we see it, no constitutionally sufficient reason to deprive the juvenile of the right to a jury trial where the charge of delinquency brought against him is predicated upon the commission of an offense declared to be a felony by the Legislature of the State of Tennessee. In re D, 34 A.D.2d 41, 310 N.Y.S.2d 82, and Nieves v. United States, D.C., 280 F.Supp. 994. Cf. In re Terry, 438 Pa. 339, 265 A.2d 350.

Counsel for the State, in his brief, makes the argument that ''a consideration of the sparing of a child from the traumatic experience of a jury trial, and the avoidance of delay in disposition when such delay would be anti-therapeutic for the juvenile offender should control this case.'' We do not concede that the substitution of a jury for a judge as the trier of fact would be a traumatic experience for the juvenile, but, if so, our answer is simply that where due process comes into conflict with procedures in the juvenile courts—however laudable the purpose behind the adoption of the procedures—due process must prevail.

The judgments are reversed and the causes are remanded for a new trial.

McAmis, P. J., and Parrott, J., concur.