STATE of Tennessee ex rel., Petitioner,

v.

Robert STRICKLAND and Dewayne Strickland, Respondents.

STATE of Tennessee ex rel., Petitioner,

v.

Terrance LOVELACE and Otto Smith, Respondents.

Terrance LOVELACE, Petitioner,

v.

STATE of Tennessee ex rel., Respondent.

Theodore Ernest COTTON, Petitioner,

v.

STATE of Tennessee ex rel., Respondent.

Supreme Court of Tennessee.

Dec. 8, 1975.

On Petition to Rehear Feb. 2, 1976.

R. A. Ashley, Jr., Atty. Gen., Wm. C. Koch, Jr., Asst. Atty. Gen., Nashville, for State.

Jerry H. Summers, Chattanooga, for Lovelace.

Fielding H. Atchley, Jr., Atchley, Atchley & Cox, Chattanooga, for Cotton.

Jesse O. Farr, Farr & Schulman, Chattanooga, for Strickland.

## OPINION

FONES, Chief Justice.

The issues in the four (4) captioned cases are identical and involve: (1) the rights of a juvenile taken into police custody for questioning; (2) compliance with the requirements of T.C.A. § 37–234 which provides for a transfer hearing in juvenile court to determine whether the juvenile should stand trial as an adult in criminal court.

The defendants, Robert and Dewayne Strickland, Terrance Lovelace, and Otto Smith were all allegedly involved in the same incident, and the facts critical to this decision are basically the same for these defendants. The defendant Theodore Cotton, was allegedly involved in a separate and distinct crime, and his factual situation is somewhat different. We are deciding all of the cases in this single opinion.

The Strickland brothers, Terrance Lovelace, Otto Smith, and Jessie Sales (not before this Court) were charged with the armed robbery of Mr. Charles McAtee and the

armed robbery and rape of Mrs. Charles McAtee which occurred on February 11, 1973. At the time of the incident, Robert Strickland and Terrance Lovelace were fifteen years of age, and Dewayne Strickland and Otto Smith were sixteen years of age.

On February 12, 1973, detectives, acting on a tip from an informant, questioned the defendants at police headquarters. The youths denied involvement in the incident and each gave an account of his whereabouts on the day in question.

After further investigation, the police determined that the youths' earlier statements were not consistent, and on February 19, 1973, they were again taken to police headquarters, accompanied by their parents. Although the record is not clear, it appears that this second session of questioning lasted around fourteen (14) hours. The questioning was concluded after each boy waived his constitutional rights and gave a statement implicating himself in the incident. Only then were the youths placed under the jurisdiction of the Juvenile Court.

A hearing pursuant to T.C.A. § 37–234 was held in Juvenile Court to determine whether the juveniles should be transferred to the state criminal court to be tried as adults. The Juvenile Judge determined that the juvenile defendants should be tried as adults. On May 11, 1973, Mrs. McAtee died from gunshot wounds inflicted during the armed robbery and rape, and the additional charge of murder was placed against the defendants.

An appeal of this transfer to criminal court was taken pursuant to T.C.A. § 37–258,[1] where a de novo review was held in the Circuit Court of Hamilton County to determine whether the statutory requirements for transfer from Juvenile Court had

been met. The Circuit Court determined that those requirements had been met, and the defendants appealed to the Court of Appeals. The Court of Appeals reversed the finding of the two lower courts and ruled that the confessions given by each of the youths on February 19, 1973, were inadmissible before the Juvenile and Circuit Courts[2] because the police had failed to comply with the requirements of T.C.A. § 37–201 et seq. Without these confessions, the Court of Appeals found there was no evidence to support the lower courts' findings that the defendants should be tried as adults.

The State, in its Petition for Certiorari, assigns as error the action of the Court of Appeals in finding that the confessions were obtained in violation of the statute. It maintains that the temporary detention of a juvenile at police headquarters for the purpose of questioning prior to taking him before the juvenile court is not a violation of T.C.A. §§ 37–215, 37–216.

The juvenile defendants bring several assignments of error, four (4) of which are discussed in this opinion: (1) three (3) days written notice of the time, place and purpose of the transfer hearing was not given to the juveniles and their parents as required by T.C.A. § 37–234(a)(3); (2) there is insufficient evidence to support the judgment of the lower courts under T.C.A. § 37–234(a)(4)(ii) that the juveniles are not amenable to treatment or rehabilitation in existing juvenile facilities; (3) the Circuit Court erred in failing to grant a jury trial; (4) T.C.A. § 37–234 is unconstitutionally vague and overbroad. The defendants also maintain that their arrests and confessions were obtained in violation of their constitutional rights. We do not reach this issue as our interpretation of the statute renders

---

1. There were two separate appeals. Robert and Dewayne Strickland appealed first, followed by Terrance Lovelace and Otto Smith. It is not clear from the record as to the disposition of *State v. Jessie Sales.*

2. T.C.A. § 37–227(b) provides that an extrajudicial statement obtained from a juvenile in violation of chapter two of the Juvenile Court Act shall not be used against him.

unnecessary any constitutional considerations.

## I.

First we consider the contention made by the State that the Court of Appeals erred in finding that the defendants' confessions were obtained in violation of T.C.A. § 37–201 et seq.

It is asserted by the State that T.C.A. § 37–215 and T.C.A. § 37–216 are not applicable to temporary investigative questioning of a juvenile at police headquarters. Those sections read in pertinent part as follows:

37–215. Custody—Release to proper party—Warrant for custody.—(a) A person taking a child into custody, shall directly with all reasonable speed:

(1) release the child to his parents, guardian or other custodian upon their promise to bring the child before the court when requested by the court, unless his detention or shelter care is warranted or required under § 37–214; or

(2) bring the child before the court or deliver him to a detention or shelter care facility designated by the court or to a medical facility if the child is believed to suffer from a serious physical condition or illness which requires prompt treatment. He shall promptly give notice thereof, together with a reason for taking the child into custody, to a parent, guardian, or other custodian and to the court. Any temporary detention or questioning of the child necessary to comply with this subsection shall conform to the procedures and conditions prescribed in this chapter and rules of court.

\* \* \* \* \* \*

37–216. Place of detention.—(a) A child alleged to be delinquent or unruly may be detained only in:

(1) a licensed foster home or a home approved by the court;

(2) a facility operated by a licensed child welfare agency;

(3) a detention home or center for delinquent children which is under the direction or supervision of the court or other public authority or of a private agency approved by the court; or

(4) any other suitable place or facility designated or operated by the court. The child may be detained in a jail or other facility for the detention of adults only if other facilities in paragraph (3) above are not available, the detention is in a room separate and removed from those for adults, it appears to the satisfaction of the court that public safety and protection reasonably require detention, and it so orders.

\* \* \* \* \* \*

In support of its proposition that the police may temporarily detain and question a juvenile in disregard of the above quoted statutes, the State cites as authority several cases in which similar statutes have been construed in other jurisdictions. See, e. g. *State v. Smith*, 32 N.J. 501, 161 A.2d 520 (1960); *People v. Zepeda*, 47 Ill.2d 23, 265 N.E.2d 647 (1970). The language in these cases indicates obvious concern for the hampering of police effectiveness in the investigation and questioning of juveniles, as well as concern for the protection of juveniles. The results of the decisions show that in balancing the conflicting interests involved, the courts found that the interests of the police in efficient investigation of criminal activity far outweigh any protection afforded the juvenile.

■ While we agree that the effectiveness and efficiency of police investigation of juveniles may be greatly hampered by the statute, and that the statute places additional burdens on the police beyond the mandates of the Constitution, we will not substitute our judgment for that of the Legislature.

■ The defendants maintain that the police did not comply with T.C.A. § 37–

215(a) or T.C.A. § 37–216 which enumerate the places where a juvenile may be detained. We hold that T.C.A. § 37–216 is not applicable in the instant case as that statute does not govern temporary custodial questioning by the police, and it does not prescribe the only permissible locations at which police questioning may be accomplished.

The question of police compliance with T.C.A. § 37–215(a), however, presents a more critical question. The juveniles were not released to their parents as provided for in T.C.A. § 37–215(a)(1). They were detained and questioned by the police for a considerable length of time, possibly as long as fourteen (14) hours. Even though the parents were present, the juveniles were not free to go, and they were not in their parents' custody but in the custody of the police.

■ Nor does it appear the T.C.A. § 37–215(a)(2) was complied with. This sub-section mandates the procedure the police must follow if they wish to take a juvenile into custody for questioning. The juvenile must be brought before the court, notice given that the juvenile is in custody, together with the reason for taking him into custody. The statute clearly implies that on this occasion the police may request permission of the court to temporarily detain the juvenile for questioning, and that the judge granting such permission will prescribe appropriate conditions under which the questioning shall be conducted. It affirmatively appears from the record that this procedure was not followed in the instant case. The record shows that the juveniles were never brought before the Juvenile Judge, even though he came to the police station and authorized the police to fingerprint and photograph the juveniles after they had been questioned for several hours.

The statute requires juveniles to be taken before the court "directly with all reasonable speed." The police did not comply with the requirement, and the confessions obtained in violation of that section may not be used against the juveniles. T.C.A. § 37–227(b).

■ The Court of Appeals correctly held that the confessions were obtained in violation of T.C.A. § 37–215(a) and were not admissible before the Juvenile Court or the Circuit Court. The Court of Appeals erred, however, in determining that without the inadmissible confessions there was no evidence to support the Circuit Judge's findings that the defendants may be tried as adults.

■ The testimony in the Juvenile Court of then codefendant Jessie Sales was competent testimony which implicated the Strickland brothers, Terrance Lovelace, and Otto Smith.

When Jessie Sales was called to the witness stand and duly sworn, the Juvenile Court Judge made the following statement:

"THE COURT: Let the record show that the Court is not demanding that this young man testify. The young man is testifying in his own behalf and it is a decision made by the young man, Mr. Sales, and his attorney. You may proceed." BE at 504.

Shortly after his direct testimony began, a motion to sever was made by counsel for Otto Smith, which was overruled. Thereafter, Sales' direct testimony continued, conducted by his lawyer. Next he was cross-examined by the district attorney, Mr. Lanzo, then by counsel for the Stricklands, Mr. Ortwein. After several pages of that cross-examination the following transpired:

"MR. LANZO: (Interposing) Your Honor, I object to the cross examination by all defense attorneys. They have no relevancy in this case if they're—if the statement of this man is not to be used against their client, there is no proof and—

MR. ORTWEIN: (Interposing) If no evidence that this man has given is to be used against my clients in the determination of this case—

THE COURT: That's the ruling.

MR. ORTWEIN: I'll waive cross examination. I misunderstood, may it please the Court.

THE COURT: No, I said this waiver would not affect you all because I have not ruled on your motion to dismiss.

MR. ORTWEIN: Then my understanding is that no matter what this man has said about any of my clients, it will not be taken on the motion to dismiss?

THE COURT: This is correct.

MR. ORTWEIN: I'll waive any further. I'm sorry.

MR. BEAN: Could I have just a minute?

THE COURT: Yes.

MR. GUEST: The same here.

*FURTHER CROSS EXAMINATION*

*EXAMINATION BY MR. BEAN:*

Q  Mr. Sales, you say you didn't know anybody had a gun over there?

MR. LANZO: Your Honor, I object to Mr. Bean questioning him. He has no interest in this man. It's discovery at this point.

Q  It's a what?

MR. LANZO: It's discovery.

Q  I think I have a right to cross examine a witness in a case such as this.

THE COURT: You may do so.

MR. LANZO: The right of cross examination only goes to people who accuse his clients and, if the Court has said that whatever he says is not to go against his client he has no interest.

Q  If it please the Court, he's already made statements to accuse everybody.

MR. LANZO: Well, the Court has indicated that what he says is not to be used against their men. For that reason they have—it's a moot question, whether they cross examine him.

Q  Mr. Lanzo asked him that question about people specifically.

MR. WRIGHT: Your Honor, as far as the interest of Jessie Sales is concerned, we're willing for anybody to cross examine him about anything.

THE COURT: Mr. Bean, you may continue.

MR. ORTWEIN: Excuse me. As I understand it though, Your Honor, what he said about my clients is—

THE COURT: This is correct. As peculiar as it may be but—

MR. ORTWEIN: All right, sir, that's fine." BE at 523, 524, 525.

Thereafter attorneys for the other three (3) defendants cross examined Sales rather fully covering the scope of his direct examination implicating all five (5) defendants.

■ We have quoted fully all objections, discussions, and rulings by the Juvenile Court Judge with respect to the admissibility of Sales' testimony. The record contains no explicit objection or ruling thereon, only an implication arising from the foregoing quote that the Juvenile Court Judge had, de hors the record, advised the parties and their lawyers that Sales' testimony was not to be considered in the transfer hearing of the other four defendants. Sales' testimony was not inadmissible as violative of the Bruton rule, or any other rule of evidence. The Juvenile Court Judge evidently disregarded Sales' testimony erroneously and relied erroneously upon the confessions of the defendants. We hold the testimony of Sales was admissible, and sufficient to support a finding that there existed reasonable grounds to believe that the five (5) defendants committed the delinquent acts alleged in the petitions involved in the transfer hearing. We further hold that the defendants cannot assert any valid claim of preju-

dicial error arising out of a belief that said testimony would not be considered, because, in fact, they were allowed more than adequate cross-examination for the purposes of a transfer hearing.

The testimony of Jessie Sales was evidence sufficient to provide the Juvenile Judge with reasonable grounds to believe the defendants committed the crimes charged, and, being a part of the record by stipulation on the Strickland brothers' appeal to the Circuit Court, provided the Circuit Judge with reasonable grounds to believe that Robert and Dewayne Strickland committed the crimes charged. Additionally, Jessie Sales also testified at the de novo appeal in Circuit Court again implicating Terrance Lovelace and Otto Smith.

### II.

▆▆▆ The defendants maintain that they did not receive three (3) days notice in writing of the time, place and purpose of the transfer hearing as required by T.C.A. § 37–234(a)(3). Even though the burden is on the State to prove that notice was given, and this fact is not reflected in the record, the assignment of error cannot stand as it does not appear that objection to the lack of notice was made prior to the hearing. The juvenile defendants and their counsel appeared at the transfer hearing on March 8, 1973, and participated in that proceeding without making objection to the lack of formal written notice. The first time any objection was made to the alleged lack of notice was in a motion to vacate judgment, filed on behalf of Robert and Dewayne Strickland after the transfer hearing had been held and judgment rendered. This is analogous to the rule that objections to the sufficiency of service of process must be made prior to appearance of the defendant and his defending on the merits. *State v. Collier*, 160 Tenn. 403, 23 S.W.2d 897 (1930); *Title Guaranty and Trust Company v. Johnson*, 485 S.W.2d 764 (Tenn.App.1972). The juvenile judge must be given the opportuni-

ty to correct any defects of notice and conduct the hearing free from error. We hold that unless objection to the sufficiency of the notice requirements of T.C.A. § 37–234 is made prior to or at the beginning of the transfer hearing, it is waived.

### III.

▆▆▆ Defendants next argue that there is insufficient evidence in the record to support a finding that the juveniles are not amenable to treatment or rehabilitation in available facilities as required by T.C.A. § 37–234(a)(4)(ii). The court is only required to find that there are "reasonable grounds" upon which to base a finding that a juvenile is not amenable to rehabilitation. The juvenile court, in its role of *parens patriae*, is placed in a unique position with regard to the persons appearing before it. The juvenile judge is experienced in the evaluation of youthful offenders and is given a wide range of discretion in attempting to establish the most beneficial course of action in rehabilitating those offenders. In making a decision whether a juvenile is amenable to treatment or rehabilitation, the juvenile judge may consider many factors including testimony by expert witnesses, the type of facilities available, length of stay in these facilities, the seriousness of the alleged crime, and the attitude and demeanor of the juvenile. The record indicates that if processed through the juvenile court and correctional system, the juvenile offenders would spend approximately six (6) to nine (9) months in institutional custody, and the Court would have no control over which of the several juvenile correctional institutions would be responsible for the treatment of the juvenile defendants. There was also testimony that the short term rehabilitative programs for juveniles are largely ineffective. This is certainly sufficient evidence to uphold the finding of the Juvenile Judge that a juvenile who had committed armed robbery, rape, and murder would not be amenable to treatment or

rehabilitation in a period of six (6) to nine (9) months.

## IV.

■ Defendants, relying on *Arwood v. State*, 62 Tenn.App. 453, 463 S.W.2d 943 (1970), maintain they were denied their right to a jury trial. While there is no question about the soundness of the *Arwood* decision, the defendants' reliance on it is misplaced. *Arwood* dealt with the situation where three (3) juveniles were denied a jury trial on their de novo appeal to Circuit Court. Relying on *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the Court of Appeals held that a juvenile charged with delinquency predicated upon a felony is entitled to have a jury determine his guilt or innocence at trial. That is not the situation in this case. The juveniles here have not been tried upon any charge; their guilt or innocence has not been adjudicated. They have no constitutional right to a jury trial at what is essentially a probable cause hearing. Nor is there a statutory right to a jury trial as T.C.A. § 37–234(a)(4) provides that the judge shall make the factual determinations at the transfer hearing.

## V.

■ Lastly defendants argue that T.C.A. § 37–234 is unconstitutional because it is overbroad and vague. The assignment is without merit. The basic concept behind the vagueness doctrine is the idea of fairness, and that the statute should be sufficiently specific to provide notice of the type of conduct expected. The doctrine should not be used to create a constitutional dilemma out of the practical difficulties in drawing statutes. *Colten v. Commonwealth of Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 548 (1972). The lack of precision in

a statute does not render a statute unconstitutional per se. *See, Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Judged by these standards the language of T.C.A. § 37–234 is constitutionally adequate in that it establishes criteria upon which the juvenile judge is to base his decision on whether to transfer the juvenile to the criminal court, and it adequately informs the parties as to what is to be considered by the judge.

The determination by the Juvenile Judge and the Circuit Judge that Robert and Dewayne Strickland, Terrance Lovelace, and Otto Smith should be transferred to the Criminal Court to be tried as adults was correct.

## VI.

We turn now to consider Theodore Cotton's Petition for Certiorari.

Theodore Cotton is charged with the murder of Michael Evans on November 17, 1973, in Hamilton County, Tennessee. At the time of the incident, the petitioner was seventeen (17) years of age.

The police officer investigating the murder immediately after it took place was notified that the petitioner was involved and where he could be located. The officer then went to the petitioner's home where the petitioner's mother, Mrs. Cotton, allowed him to question her son. Petitioner's *Miranda* rights were read to him, and he acknowledged that he understood his rights and proceeded to make a confession. He told the officer where the pistol used in the slaying was located, and Mrs. Cotton turned it over to the officer. Petitioner was then taken to police headquarters where he gave a written confession and was later turned over to the juvenile authorities.

The Juvenile Court of Hamilton County, after receiving evidence at the transfer hearing, determined that the petitioner should be transferred to the Criminal Court

and tried as an adult. That judgment was affirmed on de novo appeal by the Circuit Court of Hamilton County. An appeal was then taken to the Court of Appeals which affirmed the transfer to Criminal Court.

In his petition for Writ of Certiorari, petitioner brings two (2) assignments of error: (1) the Court of Appeals erred in considering statements against interest made by the defendant; (2) the Court of Appeals erred in failing to remand the cause to the Juvenile Court of Hamilton County because notice as required by T.C.A. § 37–234(a)(3) was not given.

In his first assignment of error, petitioner maintains that because he was not taken "directly with all reasonable speed" to the juvenile court after being taken into custody, the written statement given by him at police headquarters was inadmissible under T.C.A. § 37–227(b). While we agree with this contention and hold that the written statement should not have been considered because of the reasons advanced in the prior discussion, there was other admissible evidence upon which the Judge could find "reasonable grounds" to believe that petitioner committed the murder. His oral confession at his home and in the presence of his mother was not obtained in violation of T.C.A. § 37–215, nor was the seizure of the pistol violative of that section.

Secondly, petitioner argues that notice of the purpose of the hearing as required by T.C.A. § 37–234(a)(3) was not given. While it does appear from an affidavit of Mrs. Cotton that notice as to the purpose of the hearing was not given, it does not appear that this defect was objected to prior to the hearing. As previously discussed, any objection to defects in notice must be made prior to the hearing or the objection is deemed waived.

The decision of the Court of Appeals in the case of *Theodore Ernest Cotton v. State* is affirmed. The decision of the Court of Appeals in *State v. Robert and Dewayne Strickland* and *State v. Terrance Lovelace and Otto Smith* is affirmed in part and reversed in part. These cases are remanded to the Juvenile Court of Hamilton County for the entry of orders transferring each case to the Criminal Court of Hamilton County where the defendants will be tried as adults.

COOPER, HENRY and HARBISON, JJ., and INMAN, Special Justice, concur.

## OPINION ON PETITION TO REHEAR

FONES, Chief Justice.

In their petition to rehear, petitioners Robert and Dewayne Strickland assert that this Court overlooked the assignment of error which alleged a violation of *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). The *Davis* case involved a situation where the police, without arrest warrants, took at least twenty-four (24) youths to police headquarters where they were questioned, fingerprinted, and released without being charged. The police also interrogated forty (40) to fifty (50) other youths either at the police station, at school, or elsewhere. The Court found that defendant's arrest was illegal and that the fingerprints obtained while defendant was illegally detained were not admissible.

A factor in the *Davis* decision was the wholesale roundup and questioning of young men without probable cause to arrest them. In the instant case testimony indicated that only ten (10) to fifteen (15) young people were questioned at police headquarters; among those questioned were the five (5) defendants subsequently charged with the offenses. This did not appear to us to fit within the *Davis* situation. Petitioners maintained that they were not allowed to fully develop the facts surrounding the alleged wholesale roundup,

detention, and questioning of suspects in the instant case. We initially felt that the proper procedure would be for petitioners to fully develop this issue in the trial court as they alleged that they had not been allowed to present evidence to substantiate their claim at the transfer hearing; however, after considering their argument in the petition to rehear, we will dispose of the issue before remand.

Assuming, without deciding, that the arrests and confessions of all the petitioners were obtained in violation of their constitutional rights, and that the confession of Jessie Sales was a "fruit of the poisonous tree," *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), we think the *testimony* of Jessie Sales was constitutionally admissible.

■ Sales' testimony was an independent act of his own free will sufficient to "purge the primary taint" of the unlawful arrest and subsequent confession. A period of several weeks intervened between the date the confession was obtained and the testimony of Sales in open court, during which time he was represented by counsel. We feel this situation is analogous to *Wong Sun v. United States*, 371 U.S. 471, 490, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963). There the defendant was unlawfully arrested and released the next day, after his arraignment. Several days later, during a lawful questioning session, the defendant gave a voluntary confession. The Court held ". . . that the connection between the arrest and the statement had 'become so attenuated as to dissipate the taint.'" 371 U.S. at 490, 83 S.Ct. at 419, quoting from *Nardone v. United States, supra*, 308 U.S. at 341, 60 S.Ct. 266. In view of *Wong Sun v. United States, supra*, we find that any illegality in the police investigation was cured by the open court testimony of Jessie Sales, and petitioners cannot complain that his testimony was an unlawful fruit of the illegally obtained confessions. Also in response to petitioners' *Davis* argument, it

should be noted that an unlawful arrest does not vitiate the entire prosecution against the accused. *Albrecht v. United States*, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927).

■ Separate and apart from the "fruit of the poisonous tree" issue, petitioners maintain the Sales' confession and testimony were illegally obtained, and that the testimony should not be used against them. Petitioners have no standing to complain that Sales' confession and subsequent testimony were unlawfully obtained. Illegally obtained evidence may be used against one whose rights were not violated in the seizure of that evidence. *Wong Sun v. United States, supra*, 371 U.S. at 492, 83 S.Ct. 407; *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Thus, petitioners may not seek to assert a right which is personal to Jessie Sales.

The remainder of the points raised in the petition to rehear were fully discussed in the Opinion.

The petition to rehear is denied.

COOPER, HENRY and HARBISON, JJ., and INMAN, Special Justice, concur.