IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 6, 2015

**STATE OF TENNESSEE v. CHRISTOPHER BELL**

**Appeal from the Criminal Court for Shelby County**
**Nos. 13-02461, 13-02515     Paula Skahan,  Judge**

_____

**No. W2014-00504-CCA-R3-CD  -  Filed March 4, 2015**

_____

Appellant, Christopher Bell, pleaded guilty to especially aggravated robbery, aggravated burglary, employing a firearm during the commission of a dangerous felony, and aggravated criminal trespass.  The trial court sentenced appellant to an effective seventeen-year sentence.  Appellant reserved a certified question of law arguing that the juvenile court did not properly conduct his transfer hearing from juvenile court to criminal court.  Following our review of the briefs, the record, and the applicable law, we conclude that appellant's transfer hearing was properly conducted and affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Stephen C. Bush, District Public Defender; Barry W. Kuhn (on appeal) and Kamilah Turner (at plea hearing), Assistant District Public Defenders, Memphis, Tennessee, for the appellant, Christopher Bell.

Herbert H. Slatery III, Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; and Marques Young, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Facts

This case arose from two separate incidents. The first occurred on July 1, 2012, when Eileen Williams discovered that someone had entered her home through a broken window. Nothing was stolen from the home. Fingerprints later connected appellant to the home invasion.

The second incident occurred on November 27, 2012. Appellant, age fifteen, went to the door of a seventy-two-year-old woman, Sarah Ann Erwin, under the guise of asking to rake leaves in her yard. However, when Ms. Erwin denied that work was needed, appellant drew a gun, pointed it at Ms. Erwin, and demanded her purse. When Ms. Erwin attempted to close her door, appellant pushed it open. Ms. Erwin then ran into her home to retrieve a weapon but fell in her attempt to escape. When she fell to the ground, appellant shot her. The bullet entered Ms. Erwin's buttocks and lodged in her armpit, damaging her liver, diaphragm, stomach, colon, and breast. Appellant demanded that Ms. Erwin retrieve her purse and made her crawl "on all fours" into the kitchen where her purse was located. Even though the victim indicated the location of her purse after she and appellant had entered the kitchen, appellant demanded that Ms. Erwin retrieve the purse from the table and hand it to him, threatening to shoot her if she did not comply. Ms. Erwin threw her purse to appellant, and appellant ran from her home. As a result of her injuries, Ms. Erwin endured a four-hour surgery, three weeks in the hospital, and three weeks in rehabilitation.

Appellant was later apprehended and was indicted on two counts of aggravated burglary, especially aggravated robbery, and employing a firearm during the commission of a dangerous felony. The juvenile court conducted a transfer hearing on November 25, 2013, and transferred appellant's case to criminal court. In criminal court, appellant pleaded guilty to especially aggravated robbery, aggravated burglary, employing a firearm during the commission of a dangerous felony, and aggravated criminal trespass. The trial court sentenced appellant to seventeen years for the especially aggravated robbery conviction, four years for the aggravated burglary conviction, six years for the employing a firearm during the commission of a dangerous felony conviction, and eleven months and twenty-nine days for the aggravated criminal trespass conviction. All sentences were aligned concurrently except the four-year aggravated burglary conviction and the six-year firearm conviction, which were aligned consecutively with one another but concurrently with the remaining sentences, for an effective sentence of seventeen years. As part of his guilty plea, appellant reserved the following certified question: "Whether the statutory requirements for transfer from juvenile court were followed and whether the transfer to Criminal Court was therefore proper."

## II. Analysis

Appellant argues that the juvenile court failed to properly consider whether appellant was amenable to rehabilitation prior to transferring appellant's case to criminal

court. The State responds that appellant's certified question is not dispositive and that the trial court properly conducted appellant's transfer hearing.

While the State argues that the certified question is not dispositive, this court has stated:

> We note that the process of obtaining appellate review of a lawyer juvenile judge's order transferring a child to be tried as an adult is rather awkward. The criminal court has no authority to decline jurisdiction. Thus, the criminal court is put in a position of being forced to dispose of the case on the merits even though an appellate court must later determine whether the decision of the juvenile court transferring the child to the criminal court was correct. Thus, it appears that in order to review the decision of the lawyer juvenile judge, the juvenile in criminal court must either (1) enter a plea of not guilty and thus preserve the issue for review, if convicted, or (2) reserve the issue on a plea of guilty or nolo contendere pursuant to Rule 37(b)(2)(i) or (b)(2)(iv) of the Tennessee Rules of Criminal Procedure. The second alternative assumes that the decision of whether the juvenile should be tried as an adult is a "certified question of law" that may be appealed pursuant to Rule 37.

*State v. Griffin*, 914 S.W.2d 564, 566 (Tenn. Crim. App. 1995). Although the term "assumes" can be construed as either a determination that a transfer hearing satisfies Rule 37 or that a reviewing court should make such a determination, this court has addressed challenges to a juvenile transfer hearing via certified question on numerous occasions. *See State v. Boccous McGill, Jr., and Darius Lacy,* No. M2013-01076-CCA-R3-CD, 2014 WL 1413875 (Tenn. Crim. App. Apr. 11, 2014); *State v. Isiah Wilson*, No. W2003-02394-CCA-R3-CD, 2004 WL 2533834 (Tenn. Crim. App. Nov. 8, 2004); *State v. Simmons*, 108 S.W.3d 881 (Tenn. Crim. App. 2002); *State v. Tavaris Hill*, No. 01C01-9301-CC-00028, 1993 WL 345537 (Tenn. Crim. App. Sept. 9, 1993). We decline to depart from that precedent.

Therefore, we address appellant's certified question on the merits. The procedure and considerations for a juvenile transfer hearing are set forth in Tennessee Code Annotated section 37-1-134. The relevant portions of the statute are:

> (a) After a petition has been filed alleging delinquency based on conduct that is designated a crime or public offense under the laws, including local ordinances, of this state, the court, before hearing the petition on the merits, may transfer the child to the sheriff of the county to be held according to law and to be dealt with as an adult in the criminal court of competent

jurisdiction. The disposition of the child shall be as if the child were an adult if:

(1) The child was sixteen (16) years or more of age at the time of the alleged conduct, or the child was less than sixteen (16) years of age if such child was charged with the offense of first degree murder, second degree murder, rape, aggravated rape, rape of a child, aggravated rape of a child, aggravated robbery, especially aggravated robbery, kidnapping, aggravated kidnapping or especially aggravated kidnapping or an attempt to commit any such offenses. The district attorney general may not seek, nor may any child transferred under this section receive, a sentence of death for the offense for which the child was transferred;

. . . .

(4) The court finds that there are reasonable grounds to believe that:

(A) The child committed the delinquent act as alleged;

(B) The child is not committable to an institution for the developmentally disabled or mentally ill; and

(C) The interests of the community require that the child be put under legal restraint or discipline.

(b) In making the determination required by subsection (a), the court shall consider, among other matters:

(1) The extent and nature of the child's prior delinquency records;

(2) The nature of past treatment efforts and the nature of the child's response thereto;

(3) Whether the offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(4) Whether the offense was committed in an aggressive and premeditated manner;

(5) The possible rehabilitation of the child by use of procedures, services and facilities currently available to the court in this state; and

(6) Whether the child's conduct would be a criminal gang offense, as defined in § 40-35-121, if committed by an adult.

Tenn. Code Ann. § 37-1-134(a)-(b).

In reviewing a juvenile court's determinations in a transfer hearing,

we do not decide where the preponderance of the evidence lies, but whether there were reasonable grounds for the juvenile court judge to believe that the three criteria of section 37-1-134(a)(4)(A)-(C) . . . were present. A juvenile court judge's discretionary decision to allow a juvenile to be treated as an adult should not be disturbed on appeal, if there was probable cause to believe that the juvenile committed the crime and the evidence at the hearing showed that the juvenile was not mentally impaired and should be legally restrained.

*State v. Jacob Andrew Brown*, No. W2012-01297-CCA-R3-CD, 2013 WL 4029216, at *6 (Tenn. Crim. App. Aug. 7, 2013) (citations omitted), *perm. app. denied* (Tenn. Dec. 10, 2013). Appellant does not argue that there was insufficient probable cause to believe that he committed the crimes alleged. Rather, appellant argues that the juvenile court did not properly consider subsection (b)(5), which is required to make the determination that a juvenile should be transferred to criminal court, because the court did not determine if appellant was amenable to rehabilitation.

However, the juvenile court specifically reviewed each of the six statutory factors in section 37-1-134(b) when making its determination. Regarding subsection (b)(5), the court stated:

I find that there is no rehabilitation for Mr. Bell in the Juvenile Justice System. No proof whatsoever has been offered that he can be rehabilitated in the Juvenile Justice System. I reject any proffer from counsel. This court has to have definitive proof, and there is no definitive proof that a young man who would take a weapon and turn it on a seventy-two-year-old woman, force her back into her home, shoot her, and then coldly force her to crawl across her house into the kitchen to retrieve her purse, and twice threaten her life can be rehabilitated when no proof is submitted on that fact. Having found against rehabilitation, having found all of the other factors that were required pursuant to law, the court makes a specific finding that it is in the interest of the community that these children . . . be put under legal restraint or discipline.

Appellant argues that the court improperly relied on only the facts and circumstances of the case rather than considering the number of programs available to juvenile offenders within the county and that this finding improperly made rehabilitation an affirmative defense.  However, the juvenile court has wide discretion in the factors that it can consider when determining if an appellant is amenable to rehabilitation, and the court needs only reasonable grounds to find that a juvenile is not amenable to rehabilitation.  *See State v. Layne*, 546 S.W.2d 220, 224 (Tenn. Crim. App. 1976) (quoting *State v. Strickland,* 532 S.W.2d 912, 920 (Tenn. 1975)).  "In making a decision whether a juvenile is amenable to treatment or rehabilitation, the Juvenile Judge *may* consider many factors including testimony by expert witnesses, the type of facilities available, length of stay in these facilities, *the seriousness of the alleged crime*, and the attitude and demeanor of the juvenile."  *Id.* at 225 (emphasis added) (quoting *Strickland*, 532 S.W.2d at 920) (internal quotation marks omitted).  The court can in good faith rely on all or none of these factors as long as there are reasonable grounds supporting the decision.  This court has also stated that a defendant's conduct surrounding the offenses and the serious nature of the offenses impact that defendant's amenability for rehabilitation.  *State v. Robert William Holmes*, No. 01C01-9303-CC-00090, 1994 WL 421306, at *3 (Tenn. Crim. App. Aug. 11, 1994).  Furthermore, the court's observation that no evidence regarding rehabilitation had been presented by either side does not transform this statutory factor into an affirmative defense.  *See id.*  Therefore, the juvenile court properly considered the facts and nature of appellant's crimes when determining whether appellant was amenable to rehabilitation.  We conclude that appellant is not entitled to relief from the juvenile court's transfer order.

## CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we conclude that appellant's transfer hearing was properly conducted and affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE