**Allen COLYER, Petitioner,**

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

Feb. 19, 1979.

ery is sought on the facts. The prayer is for a decree for $350,000.00 and for general relief.

John A. Armstrong, Greeneville, for petitioner.

Brooks McLemore, Atty. Gen., Robert L. DeLaney, Asst. Atty. Gen., Nashville, for respondent.

## OPINION

FONES, Justice.

We granted the writ of certiorari to consider the single issue of whether a juvenile's involuntary statement which meets all constitutional requirements, but was inadmissible in juvenile court because of violations of T.C.A. §§ 37–215 and 37–227, is admissible in state criminal courts.

Defendant was convicted of rape and sentenced to ten years in the penitentiary. He was arrested at the Colyer home about 9:00 p. m. on the day after the offense had been committed, taken to the sheriff's office, advised of his *Miranda* rights, as evidenced by a statement signed by defendant that he understood those rights, was willing to make a statement and answer questions and did not request a lawyer. The questioning of defendant began at about 10:45 p. m., and his statement was reduced to writing and signed about 1:30 a. m. The questioning was not continuous, and his mother was present during about forty-five minutes of the interrogation. Defendant indicated to one of the officers that he had something to say out of the presence of his mother, and the remainder of the interrogation took place out of her presence.

The statement that he signed at about 1:30 a. m. cannot be said to be either exculpatory or inculpatory. It confirms that he had a knife and a shotgun and accosted the victim from a bush in her parents' yard. It is ambiguous as to the use he made of the knife, the shotgun and bailing twine in persuading the victim to go to a barn across the road and indulge in intercourse. Defendant testified at the trial and admitted intercourse but claimed it had been consensual. Defendant's statement was not introduced by the State in its proof-in-chief and was used only on cross examination for

impeachment purposes. The trial judge evidently accepted defendant's argument that the State could not use the statement as direct evidence, relying on this Court's opinion in *State v. Strickland*, 532 S.W.2d 912 (Tenn.1975), *cert. den.* 429 U.S. 805, 97 S.Ct. 38, 50 L.Ed.2d 65 (1976).

The issue before us in *Strickland* was limited to the admissibility at a transfer hearing in juvenile court and on appeal at a *de novo* trial in circuit court of confessions obtained in violation of T.C.A. § 37–215(a). Applicable to *Strickland*, and at the time of this offense, T.C.A. § 37–215(a) effectively prohibited detention and questioning immediately after taking a juvenile into custody. The mandate of the statute was that "directly with all reasonable speed", the child should be released to his parents or brought before the juvenile court, where, implicitly, the juvenile court judge might entertain a request for questioning and prescribe appropriate conditions therefor. The Legislature amended the statute, effective March 29, 1976, by substituting "within a reasonable time" for "with all reasonable speed" and eliminated the last sentence of T.C.A. § 37–215(a)(2), referring to temporary detention and questioning. Public Acts of 1976, ch. 745, § 1.

In *Strickland*, the juveniles were held in custody about fourteen hours, prior to delivery to the jurisdiction of the juvenile court. This Court held that the statements taken during the fourteen hour detention violated T.C.A. § 37–215(a) because of the prohibition in T.C.A. § 37–227, and could not be used against the juveniles either at the transfer hearing or at the *de novo* trial in circuit court, upon appeal of the transfer hearing.

■ Unchanged since the enactment of Public Acts of 1970, ch. 600, T.C.A. § 37–227(b) provides, in part, that:

"An extra-judicial statement, if obtained in the course of violation of this chapter or which would be constitutionally inadmissible in a criminal proceeding, shall not be used against him."

It is our opinion that the per se exclusion of extra-judicial statements, obtained in violation of *this chapter* dealing exclusively with juvenile courts, is limited in scope to proceedings in that court. We base that conclusion upon the express language of T.C.A. §§ 37–227 and 37–234, augmented by the Legislative purpose expressed in the 1970 revision of Title 37, ch. 2.

■ By enactment of Public Acts of 1970, ch. 600, the Legislature repealed in its entirety T.C.A. Title 37, ch. 2, entitled "Juvenile Courts", and substituted an entirely new chapter, dealing comprehensively and exclusively with juvenile courts. The purposes of the Act, insofar as relevant here, are found in the caption and in section 1. The caption provides in part that it is, "An Act to provide for the disposition of delinquent, unruly, dependent, and neglected and abandoned children, . . . including the definition, jurisdiction and procedures of a juvenile court in each county of the state; . . ." Section 1, subsection 4 of the 1970 Act reads as follows:

"(4) To provide a simple judicial procedure through which this Act is executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced; "

Under the provisions of the 1970 Act, a child, who is believed upon reasonable grounds to have committed any crime under the laws of this State, may be transferred to the criminal court to be dealt with as an adult, but only after a hearing in the juvenile court and after findings of fact on issues prescribed in T.C.A. § 37–234.[1]

---

1. Prior statutes provided that juvenile court had no jurisdiction of a child, if upon investigation the juvenile court judge concluded there was probable cause to believe that the child was guilty of murder in the first or second degree or rape. For all other crimes, the juvenile court had the discretion to transfer a child to criminal court for trial, upon a finding that he was incorrigible and incapable of reformation or dangerous to the welfare of the community. *See* T.C.A. §§ 37–230, 37–231, prior to repeal by Public Acts of 1970, ch. 600. No procedural safeguards or basic rights, etc. were provided by Title 37, ch. 2, prior to the 1970 Act.

When the juvenile court makes an adjudication to transfer the child, the statute expressly provides that, "The disposition of the child shall be as if he were an adult . . ." *Id.*

It would be absurd to contend that any adult charged with a crime under the laws of this State is entitled to the benefits of T.C.A. § 37–227(b) which begins with the phrase, "A child charged with a delinquent act . . ." It logically follows that where the statute mandates that a child be tried as if he were an adult, he may no longer have the benefit of statutes expressly applicable to children. Adults are not charged with "delinquent acts." They are indicted for specific statutory crimes. A charge of delinquency is brought exclusively in the juvenile courts against children. A transfer hearing pursuant to T.C.A. § 37–234 is initiated by "a petition . . alleging *delinquency* based on conduct which is designated a crime or public offense under the laws . . . of this State . . ." (emphasis added).

T.C.A. § 37–227 expressly bestows upon children *charged with a delinquent act* basic rights which were not uniformly recognized or granted in the juvenile courts of this State prior to the 1970 Act, but were then enjoyed by adults on trial in the criminal courts.

█ We hold that neither T.C.A. § 37–215 nor § 37–227 apply upon the trial of a child transferred from juvenile court to be tried as an adult in the criminal courts of this State.[2]

The result reached by the Court of Criminal Appeals is affirmed for the reasons stated herein.

COOPER and HARBISON, JJ., concur.

HENRY, Chief Justice.

The only significant question presented in this criminal action is the admissibility on cross-examination, for purposes of impeachment, of a statement made by a juvenile during a custodial interrogation while detained in violation of § 37–215, T.C.A. The majority holds the statement to be admissible. I respectfully disagree.

## I.

### *Procedural History of the Case*

The criminal court origin of this case was a presentment charging petitioner with the commission of the crime of rape.

On the day of his first trial, September 23, 1976, the trial judge sustained a motion *in limine* directing that the District Attorney General, his staff, law enforcement officers, and witnesses for the State ask no questions, make no references, give no responses and make no comments as to a written statement, or any oral statements, made by petitioner; and that no questions relating thereto be asked on cross-examination.

The first trial was conducted on 23 September 1978 and ended in a mistrial. On 22 April 1977, the trial judge sustained the State's motion to use defendant's statement for the purpose of impeachment. The trial was conducted on 2 May 1978 and resulted in a verdict of guilty, with punishment fixed at ten years in the state penitentiary. Petitioner was subjected to a close, rigid, and effective cross-examination as to the contents of his statement, over the vigorous and continuing objection of his counsel. Further, the State on rebuttal called two witnesses to further establish the details of the statement.

## II.

### *The Circumstances under which the Statement was taken*

Petitioner was taken into custody on 25 February 1976, at approximately 9:00 p. m.

---

**2.** Public Acts of 1976, ch. 745, § 6 amended T.C.A. § 37–258 by dispensing with a civil appeal from a transfer hearing in juvenile court pursuant to T.C.A. § 37–234 and by providing for an "acceptance hearing" in the criminal court. T.C.A. § 37–215 and § 37–227 would be applicable to that hearing because it is essentially a review of the juvenile court's action in transferring the child to criminal court to be tried as an adult. It is, of course, no part of the *trial as an adult in criminal court.*

He was taken to the sheriff's office and questioned from about 10:45 p. m. until 1:30 a. m. the following day. Petitioner's father, who was confined to a wheel chair, came to the sheriff's office but waited outside. His mother also came and was present during a small portion of the interrogation. The statement was reduced to writing and signed about 1:30 a. m. Prior to that time he had not been released to his parents nor had he been brought before the juvenile judge. He was fully informed of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). His statement was wholly voluntary and his signed waiver of rights appears in the record. This is not a *Miranda* case. There is no suggestion of any misconduct on the part of the participating law enforcement officers, except to the extent implicit in the unlawful detention of a juvenile, sixteen years of age.

## III.

### Legality of the Detention

§ 37–215, T.C.A., as it existed at the time of the interrogation, and prior to the adoption of Ch. 745, Public Acts of 1976, read, in pertinent part, as follows:

(a) A person taking a child into custody, shall directly with all reasonable speed: (1) release the child to his parents, guardian or other custodian upon their promise to bring the child before the court when requested by the court, unless his detention or shelter care is warranted or required under § 37–214; or (2) bring the child before the court or deliver him to a detention or shelter care facility designated by the court or to a medical facility if the child is believed to suffer from a serious physical condition or illness which requires prompt treatment. He shall promptly give notice thereof, together with a reason for taking the child into custody, to a parent, guardian, or other custodian and to the court. Any temporary detention or questioning of the child necessary to comply with this subsection shall conform to the procedures and conditions prescribed in this chapter and rules of court.

These mandatory provisions of the law were ignored. Petitioner was neither released to his parents nor brought before the court nor delivered to a detention or shelter care facility designated by the court. In all respects he was detained in violation of Chapter 600, Public Acts of 1970, carried forward into our Code as § 37–201, T.C.A., et seq.

What is the effect of this unlawful detention? § 37–227(b), T.C.A. provides the answer:

A child charged with a delinquent act [an act designated as a crime, § 37–202] need not be a witness against or otherwise incriminate himself. *An extra-judicial statement, if obtained in the course of violation of this chapter* or which would be constitutionally inadmissible in a criminal proceeding, *shall not be used against him.* (Emphasis supplied).

It is no answer to say, as does the majority, that he was tried as an adult and "[i]t would be absurd to contend that any adult charged with a crime" is entitled to the benefits of § 37–227(b). The detention of this petitioner occurred when he was a "child." The subsequent transfer to the Criminal Court for trial as an adult does not alter this fact. Deliberate defiance of the applicable law following his apprehension operates to undermine the basic proceedings which resulted in his trial in the Criminal Court.

In *State v. Strickland,* 532 S.W.2d 912, 917 (1976), we said:

The statute requires juveniles to be taken before the court "directly with all reasonable speed." The police did not comply with the requirement, and the confessions obtained in violation of that section may not be used against the juveniles. T.C.A. § 37–227(b).

The Court of Appeals correctly held that the confessions were obtained in violation of T.C.A. Section 37–215(a) and were not admissible before the Juvenile Court *or the Circuit Court.* (Emphasis supplied.) 532 S.W.2d at 918.

It is true that *Strickland* involved a transfer hearing in the Juvenile Court. This is of no consequence. The commandment of § 37–227(b), T.C.A., "[a]n extra-judicial statement, if obtained in the course of violation of this chapter . . . shall not be used against him" is not susceptible to any erosive construction that would limit its sweep to procedures in the juvenile court, or that would allow its use for any purpose. Any such interpretation is inconsistent with the plain language of the statute and at variance with our holding in *Strickland.*

Moreover, it affronts fundamental fairness—with or without the statute, and irrespective of *Strickland,* to take the statement of a sixteen-year-old boy, under these circumstances, and use it against him in a criminal proceeding even though by process of statutory metamorphosis he has somehow been transformed into a man. A boy continues to be a boy until he becomes a man. Here, we deal with a boy, and, in my judgment we are dealing with him unfairly.

### Conclusion

I would reverse because of the error of the trial judge in permitting the extra-judicial statement of the petitioner to be used on cross-examination, and remand for a new trial.

I am authorized to state that BROCK, J., joins in this dissent.