535 A.2d 471

**Gary JONES**

v.

**STATE of Maryland.**

**No. 60, Sept. Term, 1987.**

Court of Appeals of Maryland.

Jan. 11, 1988.

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

MURPHY, Chief Judge.

The question presented is whether the parental notification provisions of Md.Code (1984 Repl.Vol., 1987 Cum. Supp.), § 3–814(b) of the Courts and Judicial Proceedings Article apply to a seventeen year old juvenile arrested and charged with first degree murder. If they do, we must determine whether noncompliance with these provisions renders the juvenile's confession involuntary in this case.

Section 3–814 is one of thirty-five sections of the Juvenile Causes Act. It provides that a "child" may be taken into custody by any of the following methods:

"(1) Pursuant to an order of the court;

(2) By a law enforcement officer pursuant to the law of arrest;

(3) By a law enforcement officer or other person authorized by the court if he has reasonable grounds to believe that the child is in immediate danger from his surroundings and that his removal is necessary for his protection; or

(4) By a law enforcement officer or other person authorized by the court if he has reasonable grounds to believe that the child has run away from his parents, guardian, or legal custodian."

Subsection (b) of § 3–814 provides:

"(b) If a law enforcement officer takes a child into custody he shall immediately notify, or cause to be notified, the child's parents, guardian, or custodian of the action. After making every reasonable effort to give

notice, the law enforcement officer shall with all reasonable speed:

(1) Release the child to his parents, guardian, or custodian or to any other person designated by the court, upon their written promise to bring the child before the court when requested by the court, and such security for the child's appearance as the court may reasonably require, unless his placement in detention or shelter care is permitted and appears required by § 3–815, or

(2) Deliver the child to the court or a place of detention or shelter care designated by the court."

Subsection (c) of § 3–814 authorizes the court to issue a writ of attachment when the child's parent, guardian, or custodian, although directed by the court to do so, fails to bring the child before the court.

Section 3–801 of the Act, entitled "Definitions," provides in subsection (a): *"In general.*—In this subtitle, the following words have the meanings indicated, unless the context of their use indicates otherwise"; in subsection (d): " 'Child' means a person under the age of 18 years"; and in subsection (i): " 'Court' means the circuit court of a county or Baltimore City sitting as the juvenile court. In Montgomery County, it means the District Court sitting as the juvenile court."

Section 3–804, which defines the jurisdiction of the juvenile court, provides in subsections (a) and (e):

"(a) The court has exclusive original jurisdiction over a child alleged to be delinquent, in need of supervision, in need of assistance or who has received a citation for a violation.

. . . .

(e) The court does not have jurisdiction over:

(1) A child 14 years old or older alleged to have done an act which, if committed by an adult, would be a crime punishable by death or life imprisonment, as well as all other charges against the child arising out of the same

incident, unless an order removing the proceeding to the court has been filed under Article 27, § 594A."[1]

## I

On February 20, 1985, as Baltimore City school teacher Nellie Hines was exiting her automobile, she was approached by two young males who grabbed her purse. When she resisted, she was shot in the stomach. She died on March 9, 1985, as a result of the gunshot wound.

On March 19, 1985, fifteen year old Charles Wheatley testified before the Baltimore City Grand Jury in connection with these crimes. He also made a statement to the police in which he implicated his seventeen year old cousin Gary Jones and one Tony Hopson as the robbers and slayers of Ms. Hines. Immediately thereafter, the police brought Gary Jones to the police station. At 4:25 p.m., he was placed in an interview room and given *Miranda* warnings.

Josephine Jones was in an outer office of the police station at that time. She was the grandmother and guardian of both Gary Jones and Wheatley, each of whom lived with her. Whether Josephine was present at the station in connection with Wheatley's interrogation or with Gary Jones's arrest and interrogation was not clear from the evidence. There was also conflicting evidence as to whether the police intentionally prevented Ms. Jones from seeing Gary and as to precisely when she was apprised of his arrest.

When first interrogated by the police on March 19, Gary denied complicity in the crimes. An hour later, he acknowledged being with Hopson when Hopson robbed and shot Hines; he also acknowledged receiving money from Hopson taken from the victim's purse. After his statement was reduced to writing, Jones made numerous corrections, several of them of typographical errors, before signing it.

---

1. Nor does the juvenile court, absent a reverse waiver, have jurisdiction over a child sixteen years old or older charged with armed robbery. § 3–804(e)(4).

In a statement of charges filed on March 19, Jones was charged with first degree murder and armed robbery; based on this charging document, a District Court Commissioner found probable cause to detain Jones. Subsequently, he was indicted for these and related offenses by the Grand Jury of Baltimore City and went to trial before a jury. In a motion to suppress his inculpatory statement, Jones maintained that the parental notification and release provisions of § 3–814(b) of the Juvenile Causes Act applied to him; that the police had deliberately failed to comply with these provisions; and that the noncompliance was a factor to be weighed in determining the voluntariness of his statement. The court (Bothe, J.), in denying the motion, concluded that § 3–814(b) was not applicable to Jones because he was charged with crimes beyond the jurisdiction of the juvenile court; that § 3–814(b) "obviously contemplates a juvenile act or an act being handled by the Juvenile Court"; and that Jones's statement was not, therefore, inadmissible solely for failure of notification to Jones's guardian that he had been arrested and charged with criminal offenses. The court found that Jones's statement was admissible under "the general rules of voluntariness," and it was put in evidence before the jury.

Jones was acquitted of first degree murder and armed robbery; he was convicted, however, of robbery. In an unreported opinion, the Court of Special Appeals affirmed. It said that the parental notification statute was intended as a safeguard "dealing with juvenile causes" and had no application to a case not within the jurisdiction of the juvenile court. We granted certiorari to consider the significant issue raised in the case.

## II

Jones argues before us that a literal interpretation of the first sentence of § 3–814(b) compels the conclusion that its notification provisions applied to him, since he was a child (*i.e.*, a person under eighteen) who had been taken into custody. This literal interpretation, he maintains, is fully

consonant with legislative intent, because a contrary interpretation makes the child's entitlement to § 3–814(b)'s notification requirements contingent upon the arresting officer's ability to predict the ultimate charges that will be lodged against the child. Thus, he contends, unless his view of § 3–814(b) is accepted, a juvenile who is merely charged with an offense beyond the jurisdiction of the juvenile court may be detained and questioned without parental notification, though ultimately only a delinquent act, for which parental notification would have been required, may be charged. In support of his position Jones relies upon *Crawford v. State*, 240 Ga. 321, 240 S.E.2d 824 (1977), a case in which the court stated that the requirements of Georgia's juvenile law concerning detention were applicable to a nonjuvenile detention, "because law enforcement officers cannot be certain when they question a juvenile what kind of case may develop." [2] 240 S.E.2d at 827.

Since, according to Jones, the provisions of § 3–814(b) are applicable to him, he asserts that violation of this subsection is a factor to be taken into account in assessing the voluntariness of his statement. He claims that this factor has weight in addition to, and is not subsumed in, the factors of youthfulness and denial of parental access recognized by our cases in applying the totality of the circumstances test in the determination of the voluntariness of a juvenile's confession. Jones maintains that the trial court, in violation of our holding in *Lodowski v. State*, 307 Md. 233, 252–53, 513 A.2d 299 (1986), failed to make clear factual findings with regard to noncompliance with § 3–814(b) and never separately weighed this factor in assessing the voluntariness of his confession.

---

2. Former Georgia Code Ann. § 24A–1402, now § 15–11–19 (1985, 1987 Cum.Supp.), required that a juvenile who was taken into custody be promptly brought before a juvenile or superior court prior to detention. The record in *Crawford* failed to show that this requirement had been satisfied for the sixteen year old defendant, who had been arrested on a charge of cruelty to children. 240 S.E.2d at 825.

### III

 The cardinal rule of statutory construction is to ascertain and effectuate legislative intent. *In re Ramont K.*, 305 Md. 482, 484, 505 A.2d 507 (1986); *In re Stephen K.*, 289 Md. 294, 298, 424 A.2d 153 (1981). The primary source of legislative intent is the language of the statute itself. *In re Arnold M.*, 298 Md. 515, 520, 471 A.2d 313 (1984). This language must be construed without resort to subtle or forced interpretations. *Id.*, 298 Md. at 521, 471 A.2d 313. When construing a provision that is part of a single statutory scheme, the legislative intent must be gathered from the entire statute, rather than from only one part. *In re Stephen K., supra.* Hence, the language of § 3–814(b) must be harmonized both with its immediate context and with the larger context of the entire Juvenile Causes Act.

 Jones's reading of § 3–814 simply cannot be harmonized with its immediate context, for it creates a strained and illogical transition from the first sentence of § 3–814(b) to the second. The second sentence provides for the release of the child to its "parents, guardian, or custodian or to any other person designated by the court" or, alternatively, for delivery of the child "to the court or a place of detention or shelter care designated by the court." We think it plain that the legislature, in enacting § 3–814, did not intend to require the release of a juvenile to the child's parent or guardian when, as here, the crimes charged—first degree murder and armed robbery—were both beyond the jurisdiction of the juvenile court. There can be no doubt that the statutory reference to "the court" means the juvenile court; the "court" is so defined in § 3–801(i) and is consistently used with this meaning throughout § 3–814. Code, Art. 27, § 594A, specifies that a juvenile court may never obtain jurisdiction by reverse waiver when the offense charged "is murder in the first degree and the accused child is 16 or 17 at the time the alleged offense was committed." Under § 3–804(a) and § 3–812, juvenile court jurisdiction originally attaches upon the filing of a petition by an authorized party in which it is alleged that a child is delinquent, in need of

assistance, or in need of supervision.[3] *Parojinog v. State,* 282 Md. 256, 265, 384 A.2d 86 (1978); *Hart v. Bull,* 69 Md.App. 229, 232–34, 516 A.2d 1043 (1986). Thus, to accept Jones's interpretation of § 3–814 requires a finding that the legislature intended that a child in his circumstances was to be brought before a court that could never exercise jurisdiction over him.[4] So forced a reading of the statute cannot be justified.

Nor can Jones's interpretation of § 3–814(b) be harmonized with the purposes of the Juvenile Causes Act as a whole. Although the special protections thereby afforded to children are not in express terms limited to children within the jurisdiction of the juvenile court, it is clear the legislature did not intend to extend these protections to all children. Section 3–802(a)(1) states: "The purposes of this subtitle are: (1) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle...." Manifestly, therefore, some children were excluded from the protective ambit of the Act. Who these children would be, if not those expressly removed from juvenile court jurisdiction by § 3–804, is opaque at best. We think a more natural interpretation of § 3–802(a)(1) would find in it a recognition by the legislature that some children are not in a position to benefit from the Act's special treatment, and that among these children are those, as here, expressly removed from juvenile court jurisdiction. Thus, to extend the parental notification requirements of § 3–814(b) to an individual charged with offenses beyond the juvenile court's

---

**3.** The juvenile court also obtains jurisdiction on other grounds that are not pertinent to the instant case. *See* § 3–804(a), (b), (c) of the Courts Article.

**4.** By contrast, the juvenile custody subsection of Georgia's Juvenile Proceeding Article (Ga.Code Ann. § 15–11–19(a)(4) (1985, 1987 Cum. Supp.), which resembles in many respects the provisions of Maryland's § 3–814, provides that a child chargeable as an adult who has been taken into custody is to be brought before a court exercising adult criminal jurisdiction.

jurisdiction would be inconsistent with the stated purposes of the Juvenile Causes Act.

*Crawford v. State, supra,* the Georgia case upon which Jones places reliance, is not apposite. Unlike Maryland, Georgia provides that a juvenile court has concurrent jurisdiction with the superior court over a juvenile who is alleged to have committed a crime punishable by death or life imprisonment. Moreover, on similar facts, the Supreme Court of Tennessee reached an opposite result in *Colyer v. State,* 577 S.W.2d 460 (Tenn.1979), stating as its rationale that "[i]t logically follows that where the statute mandates that a child be tried as if he were an adult, he may no longer have the benefit of statutes expressly applicable to children." *Id.* at 463.

As § 3–814(b) has no application in this case, noncompliance with its provisions had no direct bearing on the validity of Jones's *Miranda* waiver or the traditional voluntariness of his ensuing confession. The purpose of § 3–814(b) is to protect the child from unnecessary separation from a parent or guardian. Statutes in other jurisdictions have been similarly so interpreted. *See, e.g., State v. Hunt,* 607 P.2d 297, 301–02 (Utah 1980); *Theriault v. State,* 66 Wis.2d 33, 223 N.W.2d 850, 855–56 (1974); *Doerr v. State,* 348 So.2d 938, 940 (Fla.Dist.Ct.App.1977).

■ We recognize, of course, that great care must be taken to assure that statements made to the police by juveniles are voluntary before being permitted in evidence. *McIntyre v. State,* 309 Md. 607, 617, 526 A.2d 30 (1987). Our cases have held that the age of a juvenile, in itself, will not render a confession involuntary; rather, we have applied the totality of the circumstances test in determining the validity of a juvenile's waiver of constitutional rights and the traditional voluntariness of a juvenile's confession. *Id.* at 620, 526 A.2d 30. The absence of a parent or guardian at the juvenile's interrogation is an important factor in determining voluntariness, although the lack of

access to parents prior to interrogation does not automatically make a juvenile's statement inadmissible. *Id.*

In the present case, no evidence was presented that Jones ever requested to see his guardian. It is also clear from the record that the trial judge, in making her assessment of the voluntariness of Jones's confession, was aware of and considered the absence of Jones's guardian during his interrogation, as well as other factors bearing on voluntariness.[5]

As our grant of certiorari was limited to determining the applicability of § 3–814(b) to the voluntariness of Jones's confession, and as we have concluded that the statute has no such application in this case, the judgment must be affirmed.

JUDGMENT AFFIRMED WITH COSTS.

COLE and ADKINS, JJ., concur.

ADKINS, Judge, concurring.

The only questions presented in this case are (1) whether Md.Code (1984 Repl.Vol., 1987 Cum.Supp.) § 3–814(b) of the Courts and Judicial Proceedings Article applies to a 17 year old juvenile charged with an offense outside the jurisdiction of a juvenile court, and (2) if so, the effect of noncompliance with the statute on the voluntariness of the juvenile's confession. Since I agree with the majority that § 3–814(b) is inapplicable, I concur in the judgment. I write separately, nevertheless, to note my continuing adherence to the

---

**5.** The fact that Jones was alone during his interrogation was assumed throughout a long colloquy between Jones's counsel and the trial judge at Jones's suppression hearing concerning the applicability of § 3–814(b). The colloquy culminated in the trial judge's determination that "this young man was on the borderline of being an adult anyway chronologically and I see every evidence that he was able to fend for himself." The trial judge specifically considered Jones's youth and intelligence and also the question whether the police had "banged" on Jones during the interrogation. With respect to Jones's intelligence, the trial judge, noting that Jones corrected several typographical errors in his written statement, found that Jones was "an average intelligent young man and much more interested in accuracy." The trial judge found no physical duress.

dissenting views I expressed in *McIntyre v. State*, 309 Md. 607, 626, 526 A.2d 30, 39 (1987) (Adkins, J., dissenting).

It is troublesome that the unilateral and preliminary charging decision of a single police officer can remove a juvenile from the protections otherwise afforded by § 3–814(b). If, as here, the juvenile is charged with an offense that is both beyond the jurisdiction of the juvenile court and one that is not waivable back to juvenile court, then the juvenile never receives whatever benefit § 3–814(b) provides, even though more thorough investigation may show that his actual offense is a much lesser one, and even though more mature prosecutorial consideration concludes that an offense within juvenile court jurisdiction is the most appropriate charge.

This defect in the Juvenile Causes Act is, of course, subject to legislative cure if the General Assembly agrees that it presents a problem. The problem would be much less serious, however, if the principles I espoused in *McIntyre* were adopted. Adoption of these principles, I continue to believe, is constitutionally mandated and also in harmony with the philosophy expressed in the statutory protections the legislature has provided for juveniles.

In the *McIntyre* dissent I argued, first, that if a juvenile charged as an adult and under custodial interrogation asks to see a parent, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires that questioning must cease until the parent has been produced—just as it must cease when a suspect under custodial interrogation requests a lawyer. 309 Md. at 630–632, 526 A.2d at 41–42. In a proper case, I would extend that principle to a situation in which the juvenile under interrogation requests a grandparent or guardian. But in the case before us, Jones, unlike McIntyre, requested nobody, so that principle is not involved here.

The *McIntyre* dissent also asserted that with respect to a juvenile under the age of 14, no waiver of constitutional rights can be effective unless the juvenile has first consult-

ed with an "interested adult." As to juveniles 14 years old or older,

> "there should ordinarily be a meaningful consultation with the parent, interested adult, or attorney to ensure that the waiver is knowing and intelligent. For a waiver to be valid without such a consultation the circumstances should demonstrate a high degree of intelligence, experience, knowledge, or sophistication on the part of the juvenile."

*Id.* at 633, 526 A.2d at 43 (quoting *Commonwealth v. A. Juvenile,* 389 Mass. 128, 134, 449 N.E.2d 654, 657 (1983)). Jones was not permitted to consult with an "interested adult" although his grandmother/guardian was at the police station while he was being questioned. He was 17 years old. Under those circumstances, for his statement to have been admissible, the State should have been required to show that Jones had "a high degree of intelligence, experience, knowledge, or sophistication...." In short, the validity of his statement was subject to heightened scrutiny. The trial judge's voluntariness review here arguably was sufficient to meet the totality standard of the *McIntyre* majority, 309 Md. at 621–626, 526 A.2d at 36–39. It was certainly more careful and focused more on the appropriate factors than the trial judge's cursory analysis in *McIntyre, id.* at 634–637, 526 A.2d at 43–45. The judge here did consider Jones's age, intelligence, level of maturity, the lack of physical coercion, and the somewhat exculpatory nature of the statement. But it is not clear that this would meet the heightened scrutiny I believe was required under the circumstances. That question is likewise not before us today, however.

The majority concedes that "great care must be taken to assure that statements made to the police by juveniles are voluntary before being permitted in evidence." Maj.op. at 407, 535 A.2d at 476. Particularly when § 3–814 is not

applicable, that "great care" requires invocation of the safeguards proposed in the *McIntyre* dissent.

Judge COLE has authorized me to say that he joins in this concurring opinion.