IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

OCTOBER 1997 SESSION

FILED

December 12, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 01C01-9701-CC-00004 |
| Appellee, | ) | |
| | ) | MAURY COUNTY |
| VS. | ) | |
| | ) | HON. JAMES L. WEATHERFORD, |
| WILLIAM EDWARD WATKINS | ) | JUDGE |
| and JONATHAN DAVIS, | ) | |
| | ) | (Felony Murder and |
| Appellants. | ) | Attempted Aggravated Robbery) |

FOR APPELLANT WATKINS:

SHARA ANN FLACY (at trial)
District Public Defender

WILLIAM C. BRIGHT (at trial)
209 W. Madison Street
P.O. Box 1208
Pulaski, TN 38478-1208

JOHN E. HERBISON (on appeal)
2016 Eighth Avenue South
Nashville, TN 37204

FOR APPELLANT DAVIS:

DICK CLARK (at trial)
3354 Perimeter Hill Drive, Suite 112
Nashville, TN 37211

GUY R. DOTSON (at trial)
102 S. Maple Street
Murfreesboro, TN 37130-3530

GARY M. HOWELL (on appeal)
P.O. Box 442
Columbia, TN 38402-0442

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ELIZABETH B. MARNEY
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

T. MICHAEL BOTTOMS
District Attorney General

ROBERT C. SANDERS
Assistant District Attorney General
10 Public Square
P.O. Box 1619
Columbia, TN  38402-1619

OPINION FILED: _____

AFFIRMED

JOE G. RILEY,
JUDGE

The defendants, William Edward Watkins and Jonathan Davis,[1] appeal jury convictions for one (1) count of attempted aggravated robbery and two (2) counts of first degree felony murder. Both defendants were sentenced to life imprisonment for each count of felony murder and three (3) years for the attempted aggravated robbery. The trial court ordered that the sentences run consecutively. On appeal, Watkins presents the following issues for our review:

    (1)     whether there was a fatal variance in the indictment and proof as to the name of the victim of the attempted aggravated robbery;

    (2)     whether the trial court erred in admitting his post-arrest statement after an illegal arrest;

    (3)     whether the trial court erred in denying defendant's motion to sever defendants;

    (4)     whether the trial court erred in failing to instruct the jury on second degree murder as a lesser included offense of felony murder; and

    (5)     whether the trial court erred in imposing consecutive sentences.

Davis joins in the severance and sentencing issues and raises three further issues for our consideration: (1) whether the trial court erred in accepting his transfer from juvenile court to be tried as an adult; (2) whether the trial court erred in admitting his post-arrest statement; and (3) whether the evidence was sufficient to support a finding that he was sane at the time of the offenses.

We affirm the judgment of the trial court.

## FACTS

On March 28, 1994, Watkins borrowed a gun from Lamont Orr. He met some friends at Columbia Gardens Apartments, and they began discussing a proposed plan to rob the Richland Inn. Davis approached the group and agreed to

---

[1] Defendant Davis' name is also spelled "Jonathon" in various court documents.

2

rob the Richland Inn. Watkins gave Davis the .22 caliber handgun and a ski mask, and they both walked towards the motel. The others in the group decided that they did not want to participate in any criminal activity and stayed behind.

Elwood Sinson, a guest at the Richland Inn, was meeting a business associate in his room on the ground floor. As he was waiting for his associate to open the door, he saw Davis jump from a brick wall on the side of the parking lot and walk towards him. Davis quickened his speed and aimed the gun at Sinson and said, "your money or your life." Sinson was able to get inside the motel room before Davis could do anything further.

After the failed robbery attempt at the Richland Inn, Watkins and Davis decided to rob Lamont Orr. They went to Orr's trailer, where he lived with his girlfriend, Elizabeth Smith. Orr left with them when Watkins and Davis told him that they were going to participate in a cocaine transaction. Orr drove Watkins and Davis to the parking lot of Brown's School. Upon arrival at the parking lot, Davis without any provocation shot Orr in the head. Orr was also shot a second time in the head and died as a result of these wounds. Although Orr was seen with 15-20 rocks of crack cocaine earlier that day, no drugs were found on his person after his death.

Because Smith had seen Orr leave with them, Watkins and Davis returned to the trailer. Smith was fatally shot once in the head. Earlier that evening, Smith was seen with $100. No money was found at the trailer after the homicide, and there was also evidence that some cocaine was missing from the trailer. Davis was subsequently seen wearing rings which he claimed he had taken from Smith.

Watkins was arrested two days later on an unrelated forgery charge. After being questioned on the murders, Watkins gave a statement implicating himself and Davis in the attempted robbery of Sinson and the homicides of Orr and Smith. Davis subsequently confessed to the crimes as well.

After a joint jury trial, both defendants were convicted of one (1) count of attempted aggravated robbery and two (2) counts of first degree felony murder. For

both defendants, the trial court imposed consecutive sentences of life imprisonment for each count of felony murder and three (3) years for attempted aggravated robbery. From these convictions and sentences, defendants bring this appeal.

## WATKINS - FATAL VARIANCE IN THE INDICTMENT AND PROOF

Watkins contends that the evidence of the victim's name at trial differs substantially from that alleged in the indictment, and the variance is fatal. The indictment alleged that the victim of the attempted aggravated robbery was "Edward Sensor." At trial, the state presented proof that the victim's name was actually "Elwood Sinson." The state announced prior to Sinson's testimony that his name was incorrectly listed on the indictment. Neither defendant objected.

This issue was not presented in Watkins' motion for new trial. This failure waives appellate review. Tenn. R. App. P. 3(e); *see* State v. Walker, 910 S.W.2d 381, 386 (Tenn. 1995).

Nevertheless, this issue is without merit. In order for a variance between the indictment and the proof to be fatal, the variance must be both material and prejudicial to the defendant. State v. Mayes, 854 S.W.2d 638, 640-41 (Tenn. 1993); State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984). A variance is not material "where the allegations and proof substantially correspond, the variance is not of a character which could have misled the defendant at trial and is not such as to deprive the accused of his right to be protected against another prosecution for the same offense." State v. Moss, 662 S.W.2d at 592. The defendant has failed to demonstrate that the variance between the indictment and the proof was material. Moreover, defendant has not shown that he was prejudiced by the discrepancy in the victim's name.

## WATKINS - ADMISSION OF STATEMENT

In his next assignment of error, Watkins claims that the trial court erred in

4

admitting his post-arrest statement into evidence at trial. He asserts that he was illegally arrested in his grandmother's home without a search warrant. *See* Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Therefore, he urges that his confession was "fruit of the poisonous tree" and should have been suppressed.

In a pre-trial hearing, Watkins moved to suppress his statement on the ground that he was illegally arrested without an arrest warrant. After he presented his evidence in favor of the motion to suppress, defense counsel acknowledged that there was an arrest warrant, withdrew his Fourth Amendment ground and proceeded on whether or not the confession was voluntary. The need for a search warrant was not raised in the trial court.

Watkins did not raise this issue in his motion for new trial. Therefore, the issue is waived. Tenn. R. App. P. 3(e). Moreover, the abandonment of the issue in the motion to suppress would serve as a waiver of the issue as well.[2] *See* Tenn. R. App. P. 36(a).

This issue has been waived.

## WATKINS AND DAVIS - SEVERANCE OF DEFENDANTS

Watkins and Davis both contend that the trial court erred in denying their respective motions to sever their trials. Each defendant claims that he was prejudiced by the admission of his codefendant's post-arrest statement at trial.

Before the state presented its proof, the trial court determined that the confession of each defendant would be admissible at trial. However, the trial court,

---

[2] We do not imply that an arrest of a defendant, pursuant to an arrest warrant, that occurs within another person's residence, without a search warrant, is illegal as to the arrested defendant. Steagald concerned the rights of the residential owner, not the arrested person. An arrest warrant alone is sufficient to enter the dwelling in which the suspect lives when there is reason to believe he is present. Payton v. New York, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L. Ed 2d 639 (1980).

We also note the issue of consent to enter the premises was not litigated during the motion to suppress. The record implies that the police were given consent to enter the home of Watkins' grandmother.

under the authority of State v. Porterfield, 746 S.W.2d 441, 446 (Tenn. 1988), ruled that portions of each statement which exposed the other defendant to an increased risk of conviction should be redacted. Nevertheless, the redacted versions of each defendant's statement admitted at trial still implicated the other defendant in the crimes.

**A.**

Tenn. R. Crim. P. 14(c) governs the granting or denial of a severance of defendants. The decision as to whether or not to grant a severance is left to the sound discretion of the trial judge, and this decision will not be disturbed unless the defendant is unfairly or unduly prejudiced. *See* State v. Coleman, 619 S.W.2d 112, 116 (Tenn. 1981); State v. Woods, 806 S.W.2d 205, 211 (Tenn. Crim. App. 1990); State v. Kyger, 787 S.W.2d 13, 20 (Tenn. Crim. App. 1989); State v. Hodgkinson, 778 S.W.2d 54, 61 (Tenn. Crim. App. 1989); State v. Wiseman, 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982). Stated in another manner, a trial court will not be found to have abused its discretion in denying a severance unless "the defendant was clearly prejudiced to the point that the trial court's discretion ended and the granting of [a] severance became a judicial duty." State v. Burton, 751 S.W.2d 440, 447 (Tenn. Crim. App. 1988) (quoting Hunter v. State, 222 Tenn. 672, 682, 440 S.W.2d 1, 6 (1969)).

**B.**

In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that an inculpatory confession of a nontestifying codefendant is not admissible in a joint trial with a defendant who has not confessed his participation in the crime. In a later decision, a plurality of the Court held that an "interlocking" confession of a nontestifying codefendant with proper limiting instructions would not offend the defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution. Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979).

The ruling in Parker v. Randolph based upon "interlocking" confessions was later undercut by the Court's decision in Cruz v. New York, 481 U.S. 186, 107 S.Ct.

6

1714, 95 L.Ed.2d 162 (1987). In Cruz, the Court held that the Confrontation Clause of the Sixth Amendment bars the admission, in a joint criminal trial, of a nontestifying codefendant's confession which incriminates the defendant and which is not directly admissible against the defendant.[3] 481 U.S. at 193. This is true even if the jury is instructed not to consider the codefendant's confession against the defendant, and even if the defendant's own confession is admitted against him. Id.

However, a defendant's confession may be considered at trial in order to assess "whether his codefendant's statements are supported by sufficient 'indicia of reliability' to be directly admissible against him (assuming the 'unavailability' of the codefendant) despite the lack of opportunity for cross-examination"[4] and "may be considered on appeal in assessing whether any Confrontation Clause violation was harmless." Id. at 194 (emphasis added). This holding was followed by our Supreme Court in State v. Porterfield, 746 S.W.2d at 446, and this Court in State v. Cameron, 909 S.W.2d 836, 852-53 (Tenn. Crim. App. 1995).

In the case *sub judice*, the trial court erred in admitting those portions of the statement of each defendant that implicated the other defendant in the crimes. However, when each defendant's confession is viewed by itself in conjunction with the other evidence presented, excluding the codefendant's confession, the evidence of guilt as to each defendant is overwhelming. We, therefore, conclude that the Bruton error was harmless. *See* State v. Porterfield, 746 S.W.2d at 446; State v. Cameron, 909 S.W.2d at 853; Tenn. R. App. P. 36(b).

**C.**

Watkins further contends that Davis' confession was inadmissible because it was hearsay, and no hearsay exception applies. This issue was not presented in the motion for new trial and is waived. Tenn. R. App. P. 3(e). Furthermore, as stated above, its admission was harmless as to Watkins. Tenn. R. App. P. 36(b).

**D.**

---

[3] *See* Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), as to evidence directly admissible against the defendant.

[4] *See* Lee v. Illinois, *supra*.

7

Watkins argues that he was further prejudiced because the trial court's redactions of his statement violated the rule of completeness. *See* State v. Robinson, 622 S.W.2d 62,71 (Tenn. Crim. App. 1981). After a review of the entire statement, we find that Watkins has not shown how "fairness" required the admission of his entire statement. *See* Tenn. R. Evid. 106. There is nothing in the excluded portions of Watkins' statement which would mitigate his involvement in the crimes. Furthermore, the jury was not misled as to his involvement in the crimes. In short, he has not demonstrated how he was prejudiced by the redactions. At most, this was harmless errror. *See* State v. Robinson, 622 S.W.2d at 71.

**E.**

In support of his contention that the trial court erred in denying the motion to sever the defendants, Davis also argues that relevant portions of his statement were redacted. He also claims that he was prejudiced by the introduction of evidence that Watkins had escaped from jail.

Defendant has failed to make appropriate references to the record and has failed to cite authority to support his argument. Therefore, this issue is waived. Tenn. Crim. App. Rule 10(b); State v. Turner, 919 S.W.2d 346, 358 (Tenn. Crim. App. 1995); State v. Hill, 875 S.W.2d 278, 283-84 (Tenn. Crim. App. 1993); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988); *see also* Tenn. R. App. P. 27(a)(7) and (g).

Furthermore, defendant has not shown how he was prejudiced by these alleged errors.

## WATKINS - FAILURE TO INSTRUCT ON SECOND DEGREE MURDER

Watkins asserts that the trial court erred in failing to instruct the jury on second degree murder. He maintains that second degree murder is a lesser grade of felony murder pursuant to State v. Trusty, 919 S.W.2d 305 (Tenn. 1996). He claims that the trial court had a mandatory duty to charge the jury on lesser grades or classes of the charged offense as supported by the evidence, without any

8

request by the defendant to do so. *See* Tenn. Code Ann. § 40-18-110(a). Therefore, he insists that the failure to charge the jury on second degree murder warrants a reversal and a new trial.

This issue was not presented to the trial court in the motion for new trial. Therefore, the issue is waived. Tenn. R. App. P. 3(e).

## DAVIS - ACCEPTANCE FOR TRIAL AS ADULT

Davis claims that the trial court erred in accepting his transfer from juvenile court to be tried as an adult. He argues that he sufficiently raised the issue of his mental illness. He maintains that once the issue of mental illness is raised, the state must prove that the defendant is not committable to an institution. He urges that the state did not carry its burden; therefore, he should have been tried as a juvenile.

A juvenile may be transferred from juvenile court to be tried as an adult if the court finds that there are reasonable grounds to believe that: (1) the child committed the delinquent act; (2) the child is "not committable to an institution for the mentally retarded or mentally ill"; and (3) "the interests of the community require that the child be put under legal restraint or discipline." Tenn. Code Ann. § 37-1-134(a)(4).

At the acceptance hearing conducted pursuant to Tenn. Code Ann. § 37-1-159(d), both the state and Davis presented psychological proof. The state's expert testified that he saw no evidence that Davis was mentally retarded or suffered from mental illness. The defense expert diagnosed Davis with situational depression and described him as having "paranoid tendencies." However, the defense expert further testified that she found that Davis was not committable to an institution for the mentally retarded or mentally ill.

The trial court specifically found that Davis was not "suffering from mental illness and he's not subject to commitment to any institution." We find that the record supports the findings of the trial court that Davis was not committable. Moreover, the trial court found and the record supports that Davis committed the

9

"delinquent act as alleged," and that the interests of the community required that Davis be put under legal restraint or discipline. The trial court properly accepted Davis to be tried as an adult.

This issue is without merit.

## DAVIS - ADMISSION OF STATEMENT

Davis next claims that the trial court erred in allowing his post-arrest statement to be introduced at trial. He bases this argument on two premises: (1) his statement was taken in violation of Tenn. R. Juv. P. 7(d), and (2) he did not knowingly and voluntarily waive his rights due to his mental state.

### A.

Rule 7(d) of the Tennessee Rules of Juvenile Procedure provides, in pertinent part:

> If feasible, a parent or guardian should be present during questioning. In any event, no child having been placed in and present in a detention facility shall be interrogated concerning an alleged violation of law unless the child intelligently waives in writing the right to remain silent.

Davis contends that his parents were at the police station while he was being questioned, but the officers would not allow him to see his parents.

However, it is well-settled that the failure to follow this rule will not exclude the introduction of a validly obtained confession in a trial in criminal court. Coyler v. State, 577 S.W.2d 460, 463 (Tenn. 1979); State v. Turnmire, 762 S.W.2d 893, 896-97 (Tenn. Crim. App. 1988); State v. Walker, 729 S.W.2d 272, 274 (Tenn. Crim. App. 1986); *see also* Raybin, *Tennessee Criminal Practice and Procedure* § 8.12 (1984). Therefore, the only inquiry becomes whether the confession was the result of a knowing and intelligent waiver of Davis' constitutional rights. *See* State v. Lundy, 808 S.W.2d 444, 446 (Tenn. 1991).

### B.

The record of the suppression hearing is sparse. Neither the defendant nor the officer who took the confession testified. The only persons who actually testified

10

were a clinical psychologist, defendant's mother and defendant's step-father. However, other documentation was admitted into evidence.

Davis was two (2) months shy of his eighteenth birthday when he was taken into custody and interrogated. The subjects of the suppression hearing were two (2) separate confessions by Davis; namely, a written confession taken at 6:47 p.m. on March 30, 1994, and a tape recorded confession beginning at 8:14 p.m. that same day and ending at 8:35 p.m. There is no issue as to Davis having been advised of his constitutional rights. The issue is whether Davis' mental state prevented his confession from being voluntary.

A clinical psychologist, who evaluated Davis in August 1995, some one and one-half (1½) years after the confession, opined that Davis was a paranoid schizophrenic functioning in the low average range of overall intelligence. He further opined that Davis had serious relationship problems and conflict with authority; was suggestible, gullible and confused; had a learning disability; suffered from delusions and hallucinations; lacked emotional self-control; and was distrustful. In an atmosphere of interrogation, the psychologist believed Davis would be fearful of being exploited and would have a desire to escape the situation. In light of Davis' mental capabilities, the psychologist did not believe Davis would understand the consequences of confessing and waiving his constitutional rights.

Also admitted at the suppression hearing were the results of an evaluation of Davis performed by the Forensic Services Division of Middle Tennessee Mental Health Institute in March 1995, approximately one (1) year after the confession. As a result of this evaluation, Davis was found capable of adequately defending himself in a court of law in that he understood the charges against him and possible consequences and was able to advise counsel and participate in his own defense. The evaluation concluded that a defense of insanity could not be supported and, further, that Davis did not meet the standards for commitment to a mental health institute.

Documentation was also introduced relating to an evaluation performed on May 25, 1994, by The Adolescent Center of the Children and Youth Programs of

Middle Tennessee Mental Health Institute. This evaluation was performed approximately two (2) months after the confession. Davis was found to be alert and oriented, yet suffered from paranoid thoughts and was suspicious of others. His full scale IQ was 92, which placed him within the average range of intelligence. He read at a 12.9 grade level and did math at a 6th grade level. He was thought to be a risk of harm to himself and others; however, he did not meet standards for commitment to an institution for the mentally ill.

Defendant's mother testified that Davis appeared to be in "a state of shock" and "in a daze" when she saw him at the police station on the night of the interrogation. She did not believe he understood what he was doing.

Davis' step-father testified that he and his wife were allowed to talk to Davis at the police station. Davis was able to relate to them what had happened and understood why he was there. Davis appeared to be nervous, but the step-father did not see anything particularly wrong with him on that occasion.

The written confession was in the handwriting of Davis. It is concise, understandable and details the basic facts relating to the homicides.

Likewise, the tape recorded statement of Davis gives a very clear, detailed accounting of the attempted robbery and the two (2) homicides. There is nothing in the statement to indicate that Davis did not understand what he was doing.

At the conclusion of the hearing on the motion to suppress, the trial court found that the confessions were freely, voluntarily and understandingly made. The motion to suppress was overruled.

## C.

The trial court's determination at the suppression hearing that the confessions were voluntary is presumptively correct on appeal. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). This determination is conclusive unless the evidence in the record preponderates against that finding. State v. Smith, 933 S.W.2d 450, 455 (Tenn. 1996); State v. Kelly, 603 S.W.2d 726, 729 (Tenn. 1980).

12

The test of voluntariness for confessions under Article I, § 9 of the Tennessee Constitution is broad and more protective of individual rights than under the Fifth Amendment to the United States Constitution. State v. Stephenson, 878 S.W.2d at 544. In Tennessee, the particular circumstances of each case must be examined as a whole. State v. Smith, 933 S.W.2d at 455; Monts v. State, 218 Tenn. 31, 400 S.W.2d 722, 733 (1966). The fact that one suffers from certain mental deficiencies does not necessarily prevent that person from understanding and waiving constitutional rights. *See generally*, State v. Middlebrooks, 840 S.W.2d 317, 327 (Tenn. 1992); IV Wharton's Criminal Evidence § 643, p. 169 (14th ed. 1987).

**D.**

After a careful examination of the record, we conclude that the evidence does not preponderate against the trial court's findings that the confessions were voluntarily given. Certainly, the testimony suggests that Davis indeed had certain mental deficiencies; however, these deficiencies do not establish that his confessions were involuntary.

This issue is without merit.

**DAVIS - SANITY**

In his next assignment of error, Davis challenges the sufficiency of the evidence regarding his sanity. He argues that the state did not prove beyond a reasonable doubt that he was sane at the time of the commission of the offenses.

**A.**

At the time of the commission of these offenses, insanity was a defense to prosecution if "at the time of such conduct, as a result of mental disease or defect, the [defendant] lacked substantial capacity either to appreciate the wrongfulness of [his or her] conduct or to conform that conduct to the requirements of the law."

13

Tenn. Code Ann. § 39-11-501(a)(1991).[5] There was a presumption, rebuttable in nature, that the defendant in a criminal proceeding was sane. State v. Jackson, 890 S.W.2d 436, 440 (Tenn. 1994). The defendant had the initial burden of showing that sanity was an issue. State v. Sparks, 891 S.W.2d 607, 615 (Tenn. 1995). However, if evidence was adduced during trial which raised a reasonable doubt as to the defendant's sanity, then sanity of the defendant became an element of the crime which the state had to prove beyond a reasonable doubt. Id. at 615-16 (quoting Graham v. State, 547 S.W.2d 531, 544 (Tenn. 1977)).

> In order to prove sanity, the state was required to prove:
>
> (1) the defendant was not "suffering from a mental illness at the time of the commission of the crime," or
>
> (2) the illness proved did not "prevent his knowing the wrongfulness of the act" and did not "render him substantially incapable of conforming his conduct to the requirements of the law he is charged with violating."

State v. Jackson, 890 S.W.2d at 440 (quoting State v. Clayton, 656 S.W.2d 344, 351 (Tenn. 1983)).

**B.**

At the conclusion of the state's proof, Davis presented evidence from two psychologists and a licensed counselor. Pat Fitzpatrick, a counselor at the Chattanooga Counseling Clinic, testified that Davis was extremely paranoid. Dr. Alden Kline, a licensed clinical psychologist, described Davis as "actively psychotic," anxious, tense, paranoid and experiencing auditory and visual hallucinations. Dr. Kline diagnosed him with a "schizophrenic reaction, a paranoid type." Dr. Kline concluded that Davis' schizophrenia would have impaired his judgment. Dr. Kenneth Anchor, a psychologist, also diagnosed Davis as a paranoid schizophrenic, characterized by hallucinations and delusions. Dr. Anchor further testified that this mental illness was such as to prevent Davis from knowing the wrongfulness of his

---

[5] Tenn. Code Ann. § 39-11-501 was amended in 1995 to make insanity an affirmative defense requiring clear and convincing evidence. The test for insanity was also modified.

14

actions and rendered him incapable of conforming his conduct to the requirements of the law.

On rebuttal, the state presented testimony from Dr. Amen Azema. He testified that Davis was not suffering from mental illness, and an insanity defense could not be supported. Specifically, Dr. Azema stated that Davis could appreciate the wrongfulness of his behavior and could conform his behavior to society and the law. He testified that Dr. Anchor relied upon invalid test results for his diagnosis.

Lynn Daniels, a licensed clinical social worker, found no evidence that Davis was experiencing any thought disorder. Dr. Palmeda Taylor testified that she conducted a personality inventory test on Davis to determine if he was suffering from a mental disease. Her results were invalid in that she found Davis was "making a conscience [sic] attempt to impress poorly, or . . . to 'fake bad.'"

**C.**

Once Davis and the state had presented their proof, the issue of sanity was a question for the jury to determine. They were able to weigh and assess the credibility of the expert witnesses on both sides. The jury was properly instructed on the insanity defense. We find that the evidence supports the jury's finding that Davis was sane at the time of the commission of the offenses.

This issue is without merit.

### WATKINS AND DAVIS - CONSECUTIVE SENTENCING

Both defendants contend that the trial court erred in ordering that their sentences run consecutively. Davis claims that the trial court improperly relied upon enhancement factors submitted by the state. Watkins argues that the court did not give proper consideration to consecutive sentencing criteria as outlined by State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995).

**A.**

This Court's review of the sentences imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This

15

presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

Consecutive sentencing is governed by Tenn. Code Ann. § 40-35-115. A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that one or more of the required statutory criteria exist. State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Furthermore, the court is required to determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with the general principles of sentencing. State v. Wilkerson, 905 S.W.2d at 939.

**B.**

The trial court found that both defendants were dangerous offenders "whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). We agree.

Our *de novo* review further indicates that consecutive sentencing is necessary to protect the public from further criminal conduct by both defendants. We also find that the sentences are congruent with the general principles of sentencing. Although the trial court did not make the findings required by Wilkerson, we find that these factors are present under our power of *de novo* review. State v. Adams, 859 S.W.2d 359 (Tenn. Crim. App. 1993). Consecutive sentencing is appropriate.

This issue is without merit.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is affirmed.

16

_____
**JOE G. RILEY, JUDGE**


**CONCUR:**


_____
**JOE B. JONES, PRESIDING JUDGE**


_____
**WILLIAM M. BARKER, JUDGE**