# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 11, 2014 Session

## STATE OF TENNESSEE v. BOCCOUS MCGILL, JR. and DARIUS LACY

**Appeal from the Circuit Court for Maury County**
**Nos. 22319, 22331     Stella Hargrove, Judge**

---

**No. M2013-01076-CCA-R3-CD - Filed April 11, 2014**

---

Darius Lacy ("Defendant Lacy") and Boccous McGill, Jr., ("Defendant McGill") (collectively "the Defendants") each were charged with one count of rape of a child. Both Defendants were juveniles at the time of the alleged crimes. After a joint hearing, the juvenile court transferred both Defendants to circuit court to be tried as adults. The Defendants each pleaded guilty to one count of facilitation of rape of a child, and each Defendant reserved a certified question of law concerning the propriety of the juvenile court's order of transfer. This Court consolidated the Defendants' appeals. Upon our thorough review of the record and applicable law, we reject the Defendants' challenges to the juvenile court's orders of transfer and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

John S. Colley, III, Columbia, Tennessee, for the appellant, Darius Lacy.

Russell F. Thomas, Nashville, Tennessee, for the appellant, Boccous McGill, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; Mike Bottoms, District Attorney General; and Kyle Dodd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

Each Defendant was charged with one count of rape of a child, alleged to have been committed in July 2012. In July 2012, Defendant Lacy was sixteen years old, and Defendant McGill was seventeen years old. After being transferred to circuit court from juvenile court, each Defendant pleaded guilty to one count of facilitation of rape of a child and was sentenced to ten years on probation. In conjunction with pleading guilty, each Defendant reserved a certified question of law challenging the juvenile court's order of transfer to circuit court. This Court subsequently consolidated the Defendants' appeals. The State concedes that each Defendant has satisfied the requirements for this Court's consideration of the certified questions presented. See Tenn. R. Crim. P. 37(b)(2)(A); State v. Pendergrass, 937 S.W.2d 834, 836-37 (Tenn. 1996).

To place the proof and the juvenile court's findings in context, we deem it helpful to set forth here the relevant text of Tennessee Code Annotated section 37-1-134 ("the transfer statute"):

(a) After a petition has been filed alleging delinquency based on conduct that is designated a crime or public offense under the laws, including local ordinances, of this state, the court, before hearing the petition on the merits, *may* transfer the child to the sheriff of the county to be held according to law and to be dealt with as an adult in the criminal court of competent jurisdiction. The disposition of the child *shall* be as if the child were an adult if:

(1) The child was sixteen (16) years or more of age at the time of the alleged conduct . . . ;

(2) A hearing on whether the transfer should be made is held in conformity with §§ 37-1-124, 37-1-126 and 37-1-127;

(3) Reasonable notice in writing of the time, place and purpose of the hearing is given to the child and the child's parents, guardian or other custodian at least three (3) days prior to the hearing; and

(4) The court finds that there are reasonable grounds to believe that:

(A) The child committed the delinquent act as alleged;

(B) The child is not committable to an institution for the developmentally disabled or mentally ill; and

(C) The interests of the community require that the child be put under legal restraint or discipline.

(b) In making the determination required by subsection (a), the court shall consider, among other matters:

(1) The extent and nature of the child's prior delinquency records;

(2) The nature of past treatment efforts and the nature of the child's response thereto;

(3) Whether the offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(4) Whether the offense was committed in an aggressive and premeditated manner;

(5) The possible rehabilitation of the child by use of procedures, services and facilities currently available to the court in this state; and

(6) Whether the child's conduct would be a criminal gang offense, as defined in § 40-35-121, if committed by an adult.

Tenn. Code Ann. § 37-1-134 (Supp. 2012) (emphases added).

*Transfer Hearing*

At the juvenile court hearing conducted as to both Defendants in January 2013, L.W. testified that she was the victim's grandmother and legal custodian.[1] She testified that the victim was born on April 13, 2000. In August 2012, she learned that the victim was pregnant. She took the victim to Atlanta for an abortion.

Detective Anthony Bailey with the Maury County Sheriff's Department testified that the victim's mother originally reported the victim's pregnancy to the Department of

---

[1] We refer to the victim's grandmother by her initials in order to protect the minor victim's identity.

Children's Services ("DCS"). As he investigated the case, he learned that the victim had named the Defendants. He initially interviewed Defendant McGill at Defendant McGill's residence with Defendant McGill's father and DCS worker Carl Walker present. Defendant McGill was given his Miranda warnings. Defendant McGill agreed to give a statement and told Det. Bailey "that he had sex with her, and that she had told him that she was older." Defendant McGill also provided a written statement which was admitted into evidence. The written statement provided as follows:

> I met [the victim] at a party around last year. We did have sex. She said "I am 16." I was 17 at the time. I was told that she was pregnant at least 4 months through around August. I did use a condom the times we had sex. I was also told that she was clueless to who the father was, because she had lied about her age to have sex with the boys she wanted.

This statement was dated October 3, 2012.

Det. Bailey also interviewed Defendant Lacy. This interview took place at Det. Bailey's office with Defendant Lacy's mother and DCS worker Walker present. Defendant Lacy was given his Miranda warnings. Defendant Lacy told Det. Bailey that he had had sex with the victim and that she had lied about her age. Defendant Lacy also gave a written statement which provided as follows:

> I met [the victim] at the beginning of the summer. We started talking a little bit and she told me that she was 14 years old and I said ok cool. In like the middle of the summer we started messing around an [sic] she asked me if I wanted to come over her [sic] friends house and hang out. I asked again how old she was an [sic] what grade she was in and she said she was 14 getting ready to go the [sic] 9th grade, I said ok. I went over her [sic] friends house to hang out with her and she asked me if I wanted to have sex. All this happened around July.

This statement was dated October 3, 2012.

On cross-examination, Det. Bailey acknowledged that the victim listed her age as seventeen years old on her Facebook page. He also acknowledged that testing of the "product of conception" obtained after the victim's abortion indicated that neither of the Defendants was the father.

On redirect examination, Det. Bailey stated that the victim's Facebook page was created on June 23, 2012.

4

Melissa Willette testified that she was employed by the Maury County School Board and that she kept track of disciplinary detail and attendance. She identified Defendant Lacy's academic records from 2010 through October 22, 2012. These records indicated that Defendant Lacy's grade point average was 2.4. She also identified Defendant McGill's academic records from 2009 through October 22, 2012, which reflected a grade point average of 1.58.

The juvenile court noted for the record that these records indicated Defendant Lacy's date of birth as December 6, 1995, and Defendant McGill's date of birth as March 5, 1995.

The victim testified that she was born on April 13, 2000. She currently was enrolled in seventh grade. She identified each of the Defendants. She testified that she first spoke with Defendant McGill while she was in sixth grade. They began texting one another. They did not communicate via Facebook. She had sex with Defendant McGill at Defendant McGill's house in Mt. Pleasant. She also had sex with Defendant McGill in a car parked at his house. The first time they had sex was at the end of her sixth grade year. They never discussed her age. She stated that she had sex with Defendant McGill three or four times.

The victim testified that she had sex with Defendant Lacy before she had sex with Defendant McGill. She knew Defendant Lacy because she had dated his little brother. She and Defendant Lacy were Facebook friends, and she contacted him via Facebook first. She had sex with Defendant Lacy more than once. They had sex at his house in Mt. Pleasant. They never discussed her age. She also had sex with Defendant Lacy at her friend's house. She stated that she had sex with Defendant Lacy no more than five times.

The victim told her mother when she got pregnant. Her mother told her grandparents. She was taken to the doctor, and her family then contacted Det. Bailey.

The victim stated that she did not recall who initiated the sexual encounters she had with either Defendant. She also stated that there was no force or coercion used in any of her sexual encounters with the Defendants.

Dr. Donna Moore, a psychologist, testified on behalf of Defendant McGill. She conducted a psychosexual evaluation of Defendant McGill "to look at what kind of treatment needs" he had. She recommended that he "have age appropriate sexual education"; that he "participate in pro social activities with same-age peers that would provide appropriate modeling"; that he "should not engage in the use of pornographic materials"; that his parents "should monitor his computer use"; that he should have no contact with the victim; that he should not use alcohol or other drugs; and that he should "participate in sexual offender specific counseling" and "be treated by someone qualified to address sexual misconduct among adolescents." She explained that her recommendations for Defendant McGill were

5

similar to those she would make for an adult offender. She added that there were numerous state-certified providers of the treatments she recommended for Defendant McGill, including thirty newly trained providers.

On cross-examination, Dr. Moore acknowledged that, during her interview with Defendant McGill, he did not, in her opinion, accept responsibility for his actions vis a vis the victim. Defendant McGill stated that he "played a small role in this situation" and appeared more concerned with the personal consequences than remorseful. She acknowledged that Defendant McGill's school discipline reports were "extensive." Her evaluation also revealed that Defendant McGill was "exposed to cable offerings" at home and that "his living with his father provide[d] less structure and supervision as he committed all these acts while his father was at work." She stated that there was "no data to suggest that Defendant McGill would not be amenable" to treatment. She reiterated that her recommendations for Defendant McGill were not dissimilar to those she would make for an adult offender but explained that "for juveniles, because they are still in the developmental stage, the focus is a little different, and the timing is a little different because usually there's less than a lengthy time than adults, but a lot of similarities."

There was no further proof put on after Dr. Moore's testimony. During argument, the State conceded that neither Defendant had any prior delinquency records and that there were no past treatment efforts as to either Defendant. The State also conceded that neither of the Defendants committed the sexual acts in an aggressive manner and that there was no proof indicating that these offenses were gang-related.

*Juvenile Court's Findings and Conclusions*

Defendant Lacy

The juvenile court ruled from the bench and found that Defendant Lacy was sixteen years old at the time of the alleged offense of rape of a child. The court then found that there was probable cause to believe that Defendant Lacy committed the alleged offense and that there was probable cause to believe that Defendant Lacy was not committable to an institution for the developmentally disabled or mentally ill. The court then determined that the interests of the community required that Defendant Lacy be put under legal restraint or discipline. In support of this conclusion, the juvenile court pointed out that the victim had been only twelve years old at the time of the act while Defendant Lacy was sixteen years old; that the alleged crime had been committed against a person as opposed to property; and that Defendant Lacy committed the alleged offense with premeditation. With respect to this latter finding, the court stated,

I think you knew what you were doing. I think there's no doubt that your intent was to have sex with this person, this girl; and that that was carried out; and that you did, as I said, there was a conscious and willful intent, and there was forethought and planning with respect to sexual contact or sexual intercourse with [the victim].

The juvenile court judge also stated that, given Defendant Lacy's current age of seventeen, "I don't know there's a lot that I can do for him or offer him during that period of time [until he reaches nineteen years old] that would perhaps give him the necessary tools, or information, or assessments, or whatever may be necessary to help him with his issues." The judge continued:

I don't think there's anything else that Mr. Lacy would be responsive to for further treatment by the juvenile court. I think that once they have reached a certain age, that it's beyond anymore that the juvenile court could offer. I wish that there was more that could be offered, but I don't think at this time in his life, there's anything else that the Court could offer as far as helping Mr. Lacy with these issues.

The court found that the remaining criteria set forth in the transfer statute[2] did not apply in favor of transfer but nevertheless held that the State had established that transfer was appropriate.

Defendant McGill

Regarding Defendant McGill, the juvenile court found that Defendant McGill was seventeen years old at the time of the alleged offense; that there was probable cause to believe that he had committed the alleged offense of rape of a child; that he was not committable to an institution for the developmentally disabled or mentally ill; that he had no prior records of delinquency; that there had been no past treatment efforts; that the alleged crime was committed against a person; and that the alleged offense had not been committed in an aggressive manner. As to whether Defendant McGill committed the offense in a premeditated manner, the court stated,

I think, Mr. McGill, that you did think this out. There's no doubt you wanted to have sex with this young lady. And therefore, it was premeditated. Y'all texted. Y'all had communication. If you had walked away, that may have been different, but there was premeditation. The fact is the Court finds

---

[2] See Tenn. Code Ann. § 37-1-134(b).

7

that you did think this out, and did carry out your plan of having sexual intercourse with this 12-year-old girl.

As to potential rehabilitation within the juvenile court's jurisdiction, the court stated,

> Once again, Mr. McGill will turn 18 on March 5 of 2013. The Court finds that, once again, I don't think there's anything that he would be responsive to at this point in time in the juvenile system. I think that he has gone to see Dr. Moore; has disclosed some personal information to her; and perhaps can do some follow-up on, but I don't think there's anything else at this age, because he's so close to reaching the age of 18, that there's not anything this Court can offer him that would be of benefit to him in the juvenile court.

The court also found that the alleged offense was not a gang offense. The court ordered that Defendant McGill be transferred to circuit court.

Following their transfers, each Defendant pleaded guilty to one count of facilitation of rape of a child. Each Defendant was sentenced to ten years, suspended to probation. Each Defendant reserved as a certified question of law the propriety of the juvenile court's order of transfer to circuit court.

## Standard of Review

Upon our review of a juvenile court's order of transfer,

> we do not decide where the preponderance of the evidence lies, but whether there were reasonable grounds for the juvenile court judge to believe that the three criteria of section 37-1-134(a)(4)(A)-(C) . . . were present. A juvenile court judge's discretionary decision to allow a juvenile to be treated as an adult should not be disturbed on appeal, if there was probable cause to believe that the juvenile committed the crime and the evidence at the hearing showed that the juvenile was not mentally impaired and should be legally restrained.

State v. Jacob Andrew Brown, No. W2012-01297-CCA-R3-CD, 2013 WL 4029216, at *6 (Tenn. Crim. App. Aug. 7, 2013) (citations omitted), perm. app. denied (Tenn. Dec. 10, 2013). We note that, although this language refers to the juvenile court's *discretionary* decision, the transfer statute *requires* transfer if the juvenile was sixteen at the time the

8

alleged offense was committed[3] and the remaining statutory criteria are met. See Howell v. State, 185 S.W.3d 319, 329 (Tenn. 2006).

## Analysis

### *Defendant Lacy*

Defendant Lacy contends that the proof did not support the juvenile court's finding that he committed the alleged offense with premeditation because "there is absolutely no proof in the record that he knew the victim was twelve (12) years of age." Defendant Lacy also contends that the juvenile court erred in concluding that the juvenile system could not offer him the rehabilitation that he required.

As to Defendant Lacy's contention that a finding of premeditation required proof that he knew the victim was less than thirteen years old because the offense of rape of a child is defined as "the unlawful sexual penetration of a victim by the defendant . . . if the victim is more than three (3) years of age but less than thirteen (13) years of age," Tenn. Code Ann. § 39-13-522(a) (Supp. 2012), we are constrained to disagree. First, our legislature has provided specifically that ignorance or mistake of fact is not a defense to prosecution for rape of a child even where the ignorance or mistake of fact would otherwise negate the defendant's culpable mental state. See Tenn. Code Ann. § 39-11-502(a) (2010). Second, the proof in this case established that Defendant Lacy had sex with the victim on multiple occasions. While we might agree that a single instance of sex could be the result solely of a spur of the moment decision, perhaps fueled by alcohol or other drugs, we have no trouble concluding that Defendant Lacy's repeated sexual encounters with the victim demonstrated a level of premeditation in the sense that he anticipated having sex with her and accomplished that goal.[4] Accordingly, we hold that the juvenile court did not err in finding that Defendant Lacy acted with premeditation when having sex with the victim.

Defendant Lacy also contends that the juvenile court erred in concluding that his rehabilitation was not possible within the juvenile court system, primarily due to his age and the limited amount of time that he would remain within the juvenile court's jurisdiction. However, the record before us contains no proof about what Defendant Lacy, specifically,

---

[3] Transfer is also mandatory as to certain enumerated offenses even if the juvenile was less than sixteen years old at the time he or she committed the offense. See Tenn. Code Ann. § 37-1-134(a)(1).

[4] The transfer statute does not define "premeditation." Referring to Black's Dictionary, the juvenile court relied on the following definitions: "A fully conscious, willful intent and a measure of forethought and planning" and "[t]o cause a real and substantial reflection."

required in this regard or proof that he could have been rehabilitated successfully through programs within the juvenile court system. Moreover, we presume that the juvenile judge was aware of the available programs into which Defendant Lacy could have been placed. As our supreme court has observed,

> The juvenile court, in its role of *parens patriae*, is placed in a unique position with regard to the persons appearing before it. The juvenile judge is experienced in the evaluation of youthful offenders and is given a wide range of discretion in attempting to establish the most beneficial course of action in rehabilitating those offenders. In making a decision whether a juvenile is amenable to treatment or rehabilitation, the juvenile judge may consider many factors including testimony by expert witnesses, the type of facilities available, length of stay in these facilities, the seriousness of the alleged crime, and the attitude and demeanor of the juvenile.

State v. Strickland, 532 S.W.2d 912, 920 (Tenn. 1976). In this case, the record reflects that the juvenile court judge thoroughly considered the evidence before him in conjunction with carefully considering the statutory factors. The record simply does not support Defendant Lacy's contention that he could have been rehabilitated through the juvenile court system. Accordingly, we decline to hold that the juvenile court erred in weighing this factor in favor of transfer.

In sum, we hold that the record supports the juvenile court's conclusion that it had reasonable grounds to believe that Defendant Lacy committed the offense of rape of a child, that Defendant Lacy was not committable to a mental health institution, and that the interests of the community required legal restraint or discipline. Therefore, Defendant Lacy is not entitled to relief from the juvenile court's order of transfer to circuit court.

*Defendant McGill*

Defendant McGill also takes issue with the juvenile court's determination that transfer was proper in part because he committed the alleged offense with premeditation. Defendant McGill asserts that, because the statutory factor refers to the commission of the offense in *both* "an aggressive *and* premeditated manner," Tenn. Code Ann. § 37-1-134(b)(4) (emphasis added), the juvenile court should not have weighed this factor in favor of transfer upon a finding of premeditation only. We agree insofar as this factor is entitled to *less* weight in favor of transfer when the juvenile court determines that the alleged offense was committed in either an aggressive or a premeditated manner. We disagree that this factor plays no part in a juvenile court's decision to transfer, however, unless the court concludes that the offense was committed in both an aggressive and premeditated manner.

10

While we acknowledge that factor (b)(4) of the transfer statute requires the juvenile court to consider whether the alleged offense was committed in an aggressive *and* premeditated manner, we emphasize that subsection (b) of the transfer statute also states that, "[i]n making the determination required by subsection (a), the court shall consider, *among other matters*," the six enumerated factors. Tenn. Code Ann. § 37-1-134(b) (emphasis added). This broadly inclusive language clearly indicates the legislature's intent that the juvenile court consider all matters that are relevant to its ultimate determination about "the interests of the community and whether the juvenile is amenable to treatment or rehabilitation through juvenile court rather than restraint or punishment meted out through the adult court." State v. Cecil L. Groomes, No. M1998-00122-CCA-R3-CD, 2000 WL 1133542, at *7 (Tenn. Crim. App. Aug. 10, 2000). As this Court previously has recognized, the list of specifically enumerated factors set forth in subsection (b) of the transfer statute "is by no means exclusive." Id.

Common sense dictates that a juvenile who commits crimes in a premeditated manner may put a community at risk even if the crime was not committed in an aggressive manner. For instance, a juvenile may embark on a very carefully constructed scheme to defraud elderly citizens. Although the scheme may involve no aggression, the juvenile court judge should be able to consider the extent of the juvenile's premeditation in executing the crime in determining the community's needs. Accordingly, we hold that a juvenile court may consider proof that a juvenile committed the alleged crime in a premeditated manner even if the proof does not establish that the juvenile also committed the crime in an aggressive manner. Therefore, we reject Defendant McGill's contention that, absent his aggression in committing the alleged crime, the juvenile court erred in weighing his premeditation in favor of transfer.

Defendant McGill also incorporates into his brief Defendant Lacy's argument that the proof did not establish premeditation because it did not establish that Defendant McGill knew the victim was only twelve years old at the time they had sex. Here, the proof established that Defendant McGill had sex with the victim on more than one occasion. He claimed to think that she was sixteen years old. He stated that he used a condom "the times [they] had sex." For the same reasons set forth above, we hold that the juvenile court had sufficient evidence from which to find that Defendant McGill committed the alleged offense with premeditation.

Defendant McGill also takes issue with the juvenile court's conclusion that the rehabilitative programs available through juvenile court would not be adequate. Unlike Defendant Lacy, Defendant McGill adduced proof at the transfer hearing about his treatment needs. However, although Dr. Moore testified that there were certified treatment providers available, she did not testify about the likelihood of Defendant McGill's successful rehabilitation through juvenile court as compared to the likelihood of his successful

11

rehabilitation through adult court. The juvenile court concluded that Defendant McGill's treatment needs would be better met through the adult court system, particularly in light of Defendant McGill's age and his limited time remaining as a juvenile. Given the dearth of information in the record on this point, we cannot discern error. We hold that Defendant McGill is not entitled to relief from the juvenile court's order of transfer.

## Conclusion

In sum, although most of the specifically enumerated factors set forth in subsection (b) of the transfer statute did not weigh in favor of transfer, the balancing of these factors is not simply a matter of counting how many have been met. Rather, the juvenile court is to consider all relevant matters in order to determine whether "[t]he interests of the community require that the child be put under legal restraint or discipline." Tenn. Code Ann. § 37-1-134(a)(4)(C). In this case, the juvenile court carefully considered the proof before it and, after weighing all relevant matters, determined that these Defendants met the statutory criteria mandating transfer. We hold that the record supports the juvenile court's determinations. Accordingly, neither Defendant is entitled to relief on the basis of his certified question.

For the reasons set forth above, we affirm the trial court's judgments.

_____
JEFFREY S. BIVINS, JUDGE